589 P.2d 50

**STATE of Arizona, Appellee,**

v.

**Bartolo Cruz GUTIERREZ, Appellant.**

**No. 1 CA–CR 3024.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 28, 1978.

John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Skousen, McLaws & Skousen, P.C. by Charles M. Thomas, Mesa, for appellant.

## OPINION

JACOBSON, Presiding Judge.

The defendant, Bartolo Cruz Gutierrez, was convicted by a jury of two counts of sale of the narcotic drug, heroin. Following conviction, the trial court placed appellant on probation for a period of five years. He has brought this timely appeal raising three issues:

1. Whether appellant's rights to a speedy trial were violated,

2. Whether the trial court erred in imposing sanctions on appellant for untimely discovery, and

3. Whether the trial court erred in denying appellant's motion to compel the prosecution to reveal the identity of a "confidential informant."

On May 17, 1974, two undercover narcotics officers went to the Victory Acres area in Tempe, Arizona, to purchase heroin. Riding with the officers in their unmarked automobile was a person who had been a confidential informant on other drug cases in the Mesa—Tempe area. While the informant and one of the officers, Agent Maggard, waited in the car, the other officer, Agent Acosta, approached a group of men standing near a neighborhood market. The group consisted of four or five men. Acosta then went to the east side of the market with appellant where he disappeared from view for approximately five minutes and then returned to the undercover vehicle with two tinfoil packets. These packets were later shown to contain heroin.

On July 8, 1974, another undercover narcotics officer, Tony L. Garcia, in the company of another Phoenix police detective, drove to a different address in Tempe, approximately two or three blocks from the market involved in the May 17 incident. Officer Garcia there purchased an additional quantity of heroin from appellant.

The initial complaint on the two separate counts was filed December 27, 1974. An arrest warrant was issued on December 30 of that year but appellant was not arrested until December 26, 1975, approximately one year later. Appellant was arraigned on January 21, 1976, following which the trial court granted appellant's motion to dismiss for lack of a speedy trial. This dismissal was without prejudice.

On May 4, 1976, an indictment was issued, again charging appellant with the same two sales. Count one was the May 17, 1974 sale and count two was the July 8, 1974 sale. A summons was issued on May 4, 1976, and another summons issued on October 19, 1976. Because the state was unable to serve appellant, both summonses were quashed. Warrants were then issued and appellant was finally arrested April 24, 1977. His arraignment was held on May 13, 1977, at which time the trial date was set

for June 29, 1977. However, the trial court, on its own motion, reset the trial to July 29, 1977. On June 27, 1977, appellant filed a motion to dismiss for lack of a speedy trial. This motion to dismiss was denied and the trial was commenced August 11, 1977.

Appellant first argues that the trial court erred in refusing to grant appellant's motion to dismiss for lack of a speedy trial. After the first dismissal of the charges in April, 1976, the state sought and obtained an indictment on the same charges. This indictment was handed down on May 4, 1976. Appellant, however, was not arrested until April 24, 1977. Appellant argues, based upon the fact that the initial complaint was dismissed for lack of a speedy trial, together with the fact that there was a delay of approximately 11 months from the time of the indictment until the time of the arrest, appellant's right to a speedy trial was again violated, at least as of December, 1976, the time when appellant left the state. Appellant presented evidence at the hearing on the motion to dismiss that he was at all times living openly under his own name and had provided sufficient information on his release questionnaire to enable him to be located through any reasonably diligent inquiry.

■ We need not concern ourselves here with the period of December 27, 1974, the date of the filing of the initial complaint, through April, 1976, the date of the dismissal without prejudice. Following the dismissal of a criminal action with leave to refile, which dismissal was based upon the denial of a speedy trial, the time limits of the speedy trial rule begin anew with the filing of a new information or the issuance of a summons following the grand jury indictment. *See State v. Avriett*, 25 Ariz. App. 63, 540 P.2d 1282 (1975). We, therefore, need consider only the time period between the indictment and the trial in determining whether appellant was denied a speedy trial.

Rule 8.2,[1] Arizona Rules of Criminal Procedure, in effect at the time of appellant's April, 1977 arrest, provides, in part:

"Every person against whom an indictment, information or complaint is filed shall be tried by the court having jurisdiction of the offense within 150 days of the arrest or service of summons . . ."

Simple calculation shows that appellant's trial which commenced on August 11, 1977, was within 150 days of the April, 1977 arrest. Thus, the state was in compliance with Rule 8.2 in effect at the time of the indictment. Appellant, however, argues that the Rule 8.2 rule change deals only with delays occasioned between arrest and trial and does not affect the fact that, under the United States and Arizona Constitutions, appellant still must be arrested within a reasonable time following the issuance of the warrant or summons. In other words, appellant argues that notwithstanding the amendment to Rule 8.2, there is nevertheless a constitutional right to be arrested in timely compliance with former Rule 8.2. However, with the amendment of the rule, the former rule no longer applies and we therefore must be guided by constitutional considerations in evaluating appellant's argument.

■ The factors to consider in determining whether an accused has been denied a speedy trial are length of delay, reason for the delay, the assertion of the right to speedy trial and any prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Appellant claims that his case was prejudiced because of the delay as the only witness which appellant was permitted to call, Fernando Armenta, could no longer be located. Appellant further claims that the testimony of Armenta was that of an eyewitness to the June 8 transaction and was material to the issue of appellant's identification. Ap-

1. Rule 8.2 became effective August 1, 1975. Prior to the August 1, 1975 change, Rule 8.2 read, in part, as follows:

"Every person against whom an indictment, information or complaint is filed shall be tried by the court having jurisdiction of the offense within 150 days of the issuance of a warrant or summons. . . ."

pellant also argues that he at all times made his whereabouts known to anyone who would have made reasonable inquiry. The facts show, however, that sheriff's deputies contacted appellant's sister in May, 1976, and appellant admitted to seeing his sister some time after that date. Appellant claims that his sister simply did not tell him about the summons although his apparent reason for listing her number on the release questionnaire was so that she could contact him. Sheriff's deputies also contacted appellant's aunt who told sheriff's deputies that appellant and his attorney knew of the summons. However, appellant's aunt did not disclose to the deputies the name of appellant's new lawyer and appellant denied having had any contact with his aunt during 1976. The visit with appellant's aunt in September, 1976 being to no avail, the only other alternative would have been to contact appellant at his place of employment. However, by October 31 of that year, appellant was no longer employed with the company listed on his release questionnaire.[2]

■ It is not the function of the reviewing court to second-guess what might have been done by police officers in performing their investigative functions. The appropriate analysis is whether the officers have used reasonable diligence in attempting to locate the accused, giving deference to the police officers' judgment as to which avenue of investigation is likely to be the most fruitful. *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977). The sheriff's deputies did attempt to locate appellant through his relatives but appellant did not come forth. It must therefore be assumed that the reason for the failure of the deputies to locate appellant was not from any lack of diligence on their part but through the hindrance of appellant or his relatives. Any prejudice to appellant, moreover, is doubtful. Misidentification was appellant's main line of defense. The state's witnesses were very effectively

cross-examined as to their present inability to identify appellant. This lapse of time worked as much in appellant's favor as against him. We, therefore, cannot conclude that appellant was denied his constitutional right to a speedy trial.

Appellant next argues that the trial court erred in granting the state's motion for sanctions which limited appellant's witnesses at trial. Appellant filed a notice of defenses on August 5, 1977. The trial commenced on August 11, 1977. Prior to trial, the state filed a motion for sanctions to exclude certain of appellant's witnesses for failure to provide timely discovery. Appellant's counsel argued that he had a "tacit understanding" with the prosecution that no formal notice of witnesses needed to be filed pending the resolution of the speedy trial issue. The prosecutor denied such an understanding. The addresses of the witnesses listed by appellant's counsel were not given. At least on August 10, 1977, the day before the trial, appellant's counsel was not even aware of the addresses of these witnesses.

■ Arizona Rules of Criminal Procedure, Rule 15.2(b) and (c), provide that the notice of defenses and the names and addresses of all witnesses must be provided by the defendant within 20 days after the arraignment. Rule 15.7 sets forth the sanctions for failure to comply with the rules of discovery as follows:

"a. If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with any provisions of this rule or any order issued pursuant thereto, the court may impose any sanction which it finds just under the circumstances, including, but not limited to:

"(1) Ordering disclosure of the information not previously disclosed.

"(2) Granting a continuance.

"(3) Holding a witness, party, or counsel in contempt.

---

2. Although neither the 1975 nor the 1976 release questionnaire was included with the file on this appeal, there is an indication in the record that although the appellant's place of employment was listed in the original release questionnaire, it was not included in the new case file following the May 4, 1976 indictment.

"(4) *Precluding a party from calling a witness, offering evidence, or raising a defense not disclosed* ; and

"(5) Declaring a mistrial when necessary to prevent a miscarriage of justice.

"b. If the defendant fails to comply with Rule 15.2 the prosecution need make no further disclosure except material or information which tends to mitigate or negate defendant's guilt as to the offense charged as set forth in Rule 15.1(a)(7)." (Emphasis added.)

The failure of an accused to comply with the disclosure requirements of Rule 15 may properly result in the imposition of sanctions, including preventing defense witnesses from testifying. *State v. Williams,* 113 Ariz. 442, 556 P.2d 317 (1976); *State v. Talley,* 112 Ariz. 268, 540 P.2d 1249 (1975).

However, the imposition of the sanction of prohibiting the calling of witnesses should be invoked only in those cases where other less stringent sanctions are not applicable to effect the ends of justice. *See Plonkey v. Superior Court,* 106 Ariz. 310, 475 P.2d 492 (1970); *State v. Fenton,* 21 Ariz.App. 193, 517 P.2d 1086 (1974).

■ In this case, although the "tacit understanding" was denied by the prosecution, it is clear the names of the witnesses involved were taken from a police report and thus theoretically were as available to the prosecutor as the defense. Under these circumstances, the sanction of prohibiting the calling of witnesses may have been too severe.

■ We should not, however, reverse on technical error if no prejudice results to the defendant from that error. *State v. Clark,* 112 Ariz. 493, 543 P.2d 1122 (1975). The record is clear that one day prior to trial, defense counsel did not even know the whereabouts of these witnesses. The state in its answering brief raised the issue of lack of prejudice, to which the defendant failed to respond. Under these circumstances, we cannot presume prejudice to the defendant by the trial court's granting of the motion for sanctions.

Appellant finally argues that the trial court erred in failing to require the prosecution to disclose the identity of the "confidential informant" who was present at the scene of the May 17, 1974 transaction with agent Acosta. · Appellant, prior to trial, filed a motion to compel the discovery of the name or identity of the witness. A hearing was held where agent Maggard testified that, although the informant had not given information on appellant's case, he had given information on other drug cases in the area. Agent Maggard testified that while agent Acosta was making the first buy from appellant, the informant was hiding on the floorboard of the automobile in which Maggard was waiting. Although Maggard testified that he thought the informant remained on the floor throughout most of the proceedings, he could not testify as to what was actually seen or heard by the informant regarding the drug transaction. The prosecution claimed that the identity of the informant need not be revealed under the privilege granted by Rule 15.4(b)(2):

"Disclosure of the existence of an informant or of the identity of an informant who will not be called to testify shall not be required where disclosure would result in substantial risk to the informant or to his operational effectiveness. . . ."

Appellant first argues that, although the informant may have been a confidential informant in other drug cases, he was not an informant in this particular case and there was, therefore, no privilege attached. Appellant then argues that, assuming there is a privilege in this case, the privilege no longer attaches where the informant has become a material witness.

■ We cannot categorically say that the informant privilege is not available under circumstances where, though the informant has not given information as to the particular case under examination, the informant may have given information on similar cases in approximately the same locality as the case under examination. The policy of the informant's privilege is in protecting

police informants and in maintaining a steady supply of information to our law enforcement agencies. The policy of protecting the identity of a confidential informant, where such protection is appropriate, may also apply where the informant has become involved in another case involving the neighbors or acquaintances of persons against whom the informant has been working.

■ Thus, it may become necessary to protect the identity of the informant in these other cases by prohibiting disclosure of his identity where he may have been only incidentally involved. Under the factual showing made here, the trial court did not err in determining, in the first instance, that the privilege afforded by Rule 15.-4(b)(2) applied to this witness. This, however, does not end the inquiry. Rule 15.-4(b)(2) only allows non-disclosure, "provided the failure to disclose will not infringe the constitutional rights of the accused."

■ Where the disclosure of an informant's identity is relevant and helpful to the defense or is essential to a fair determination of a cause (due process rights), the privilege protecting the name of a confidential reliable informant must give way. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *State v. Castro*, 13 Ariz.App. 240, 475 P.2d 725 (1970). Thus, it may be necessary to disclose an informant's name to show the defendant's innocence or assure him of a fair trial. *State v. Benge*, 110 Ariz. 473, 520 P.2d 843 (1974).

■ An appellant seeking to overcome the state's policy of protecting an informant's identity has the burden of proving that the informant is likely to have evidence bearing on the merits of the case. *State ex rel. Berger v. Superior Court*, 106 Ariz. 470, 478 P.2d 94 (1970). The appellant need not prove that the informant would give testimony favorable to the defense in order to compel the disclosure of his identity, nor need he prove that the informant was a participant or even an eyewitness to the crime. The appellant only need show

that the informant would be a material witness on the issue of guilt whose evidence might result in exoneration and that nondisclosure of his identity would deprive the defendant of a fair trial. *See State v. Castro, supra.*

■ In the instant case, the appellant's main defense was that of misidentification. In fact, testimony at the trial revealed a considerable discrepancy between the description of appellant in the police report and the actual appearance of appellant at the time of the crime. Moreover, the passage of time, occasioned in part by the delay of the state and in part by the delay of the appellant, made the identification issue a hotly contested one. It may be that the informant actually witnessed nothing material to the defense. However, the accused must be afforded an opportunity to personally interrogate the witness and make this determination for himself. The appellant must not be compelled to rely upon what others may testify as to what a witness may or may not have observed in a particular case. Here, there is a possibility that the informant may have information on the crucial issue of whether the purchase was made from appellant.

■ The only way that appellant may be assured of the opportunity to adequately present his case is to permit him to interview all material witnesses. *See State v. Tuell*, 112 Ariz. 340, 541 P.2d 1142 (1975); *State v. Martinez*, 15 Ariz.App. 430, 489 P.2d 277 (1971). Therefore, the trial court erred in failing to require the state to disclose the identity of the confidential informant. However, because the informant was present only at the May 17, 1974 transaction, only the conviction on this count need be set aside. As to the conviction for the July 8, 1974 transaction, we find no reversible error.

Reversed and remanded as to count one. Judgment and sentence affirmed as to count two.

SCHROEDER and OGG, JJ., concurring.