**Robert Harold FENDLER, Plaintiff-Appellant,**

v.

**Robert GOLDSMITH, and the Attorney General of the State of Arizona, Defendants-Appellees.**

No. 83–1501.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 1983.

Decided Oct. 14, 1983.

As Amended March 21, 1984.

---

* The Honorable Oren Harris, Senior United States District Judge for the Eastern and West-

ern Districts of Arkansas, sitting by designation.

Robert H. Fendler, pro per.

Linda Akers, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellees.

Before ALARCON, CANBY, and REIN-HARDT, Circuit Judges.

REINHARDT, Circuit Judge:

While on trial in Arizona state court, Robert Harold Fendler did not fully comply with the Arizona state criminal discovery rules. These rules permit extensive discovery in criminal cases, by both prosecution and defense, and provide sanctions for noncompliance. Because Fendler did not provide the prosecution with the addresses of two potential witnesses, as required by these rules, the state trial court prohibited those witnesses from testifying. On appeal from the district court's denial of his habeas corpus petition, Fendler argues, principally, that the exclusion of the two witnesses violated his sixth amendment right to present a defense. We agree with respect to one of the witnesses. However, since a transcript of the state court trial was not introduced in the habeas corpus proceeding,

we are unable to determine whether the error was harmless. Accordingly we remand the matter to the district court for a further hearing.

## BACKGROUND

In March 1977, Fendler, along with two other defendants, was charged in a 17 count indictment with criminal conduct in connection with the operation of several financial institutions headquartered in Phoenix, Arizona. One of the charges against Fendler was that he made a false book entry by overvaluing four assets: goodwill; account acquisition and retention; branch offices; and investment securities.

On March 21, 1977, the prosecution filed its initial disclosures pursuant to Rule 15.1 of the Arizona Rules of Criminal Procedure.[1] Fendler failed to make the reciprocal disclosures required by Rule 15.2(b).[2] At the prosecution's request, the Arizona state trial court ordered Fendler to comply with Rule 15.2. Fendler again did not comply, and on August 19, 1977 the trial court again ordered Fendler to obey the discovery rules or face possible sanctions pursuant to Rule 15.7.[3] On September 2, 1977, Fendler finally filed his initial Rule 15.2 disclosure.

This disclosure included the names of over 1,000 prospective witnesses.

The prosecution objected on September 14, 1977 to Fendler's disclosure because, among other reasons, he did not list the addresses for 131 of the potential witnesses as required by Rule 15.2. Colorado attorneys John Schaffer and Thomas Pierson were two of the witnesses for whom no addresses were given. The trial court then ordered Fendler to provide the addresses of every witness he intended to call. Fendler amended his disclosure statement, but still failed to provide numerous addresses, including those of Schaffer and Pierson. On October 6, 1977, the trial court granted the prosecution's motion for sanctions pursuant to Rule 15.7 and precluded Fendler from calling any witnesses for whom both names and addresses had not been provided.

Fendler's trial began on October 17, 1977. On January 8, 1978, several months into the trial and at the conclusion of the state's case, Fendler presented a list of the witnesses he intended to call. The names of attorneys Schaffer and Pierson were again included on the list, but once again no addresses were given. The state trial court,

1. Rule 15.1 requires in part that the prosecution disclose the names, addresses, and relevant written or recorded statements of all potential prosecution witnesses; the statements of the defendant and all co-defendants; information about certain experts and their findings; a list of all documents, photographs or other tangible objects to be used at trial or obtained from the defendant; a list of the defendant's prior felony convictions that will be used at trial; a list of prior acts by the defendant that will be used at trial; all information tending to mitigate or negate the defendant's guilt or punishment; and all written or recorded material involving any electronic surveillance, executed search warrants, and informants.

2. Under Rule 15.2(b), the defendant must "provide the prosecutor with a written notice specifying all defenses as to which he will introduce evidence at trial" and specify the persons (including defendant) who will be called in support of each defense. In addition, under Rule 15.2(c), the defendant must disclose the names and addresses of all witnesses he will call at trial; certain information about experts; and a list of all documents, photographs or other tangible objects to be used at trial.

3. Rule 15.7 provides:
   a. If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with any provisions of this rule or any order issued pursuant thereto, the court may impose any sanction which it finds just under the circumstances, including, but not limited to:
   (1) Ordering disclosure of the information not previously disclosed.
   (2) Granting a continuance.
   (3) Holding a witness, party, or counsel in contempt.
   (4) Precluding a party from calling a witness, offering evidence, or raising a defense not disclosed; and
   (5) Declaring a mistrial when necessary to prevent a miscarriage of justice.
   b. If the defendant fails to comply with Rule 15.2 the prosecution need make no further disclosure except material or information which tends to mitigate or negate defendant's guilt as to the offense charged as set forth in Rule 15.1(a)(7).

after hearing arguments on the issue, ruled that Fendler should have known before trial that the testimony of Schaffer and Pierson might be needed and that he should have provided their addresses. The trial judge therefore left intact his order precluding Schaffer and Pierson from testifying.

A jury convicted Fendler on the false book entry count on February 2, 1978,[4] and the trial judge sentenced him to prison for not less than four nor more than five years. Fendler appealed the false book entry conviction to the Arizona Court of Appeals in part on the ground that the Arizona criminal discovery rules in general violated the fifth amendment right against self-incrimination. In addition, Fendler argued that the order precluding Schaffer and Pierson from testifying violated his sixth amendment right to present a defense. The Arizona Court of Appeals rejected both of these contentions and affirmed the false book entry conviction. *State v. Fendler,* 127 Ariz. 464, 622 P.2d 23, 40–42 (Ariz.App. 1980). Fendler's request for review by the Arizona Supreme Court was denied on December 23, 1980.

Fendler subsequently filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1976) in the United States District Court for the District of Arizona.[5] The petition challenged the Arizona criminal discovery rules and the state trial court's preclusion order on the same fifth and sixth amendment grounds raised before the Arizona Court of Appeals. The district judge referred the case to a magistrate, who conducted an extensive hearing on the events surrounding the exclusion of potential witnesses Schaffer and Pierson.[6] The magistrate then recommended that Fendler's petition be dismissed. The district judge agreed with this recommendation and entered an order dismissing the petition. Fendler now appeals *pro se*[7] the district court's denial of his habeas corpus petition.

## DISCUSSION

Fendler's principal argument before us is that his sixth amendment right to present a defense was violated when the state court, as a sanction for noncompliance with discovery rules, precluded both Schaffer and Pierson from testifying.[8] We are, therefore, presented with the question whether

---

4. Fendler was also convicted on one count of conspiracy to commit grand theft and on one count of failure to file a corporate tax return. The trial court dismissed the conspiracy charge, however, because it contained three separate conspiracies in a single count. The Arizona Court of Appeals reversed Fendler's conviction for the failure to file a corporate tax return because the trial court erred by excluding the defense's expert witnesses. *State v. Fendler,* 127 Ariz. 464, 622 P.2d 23, 33 (Ariz. App.1980).

5. Fendler filed his petition in district court on March 2, 1981. On March 31, 1981, he also filed a petition for a writ of certiorari with the United States Supreme Court. The district court dismissed the habeas corpus petition without prejudice because of the petition pending with the Supreme Court. On June 2, 1981, the Supreme Court refused to grant certiorari. Fendler then filed an amended habeas corpus petition in district court on June 25, 1981.

6. There is no indication in the record that the magistrate had the transcript of the state court trial before him, although he did have excerpts relating to the preclusion hearing.

7. Although Fendler is representing himself on this appeal, he was apparently assisted by counsel in the Arizona state courts and before the district court. Fendler's brief on appeal is of little assistance to us.

8. In his brief to this court, Fendler also mentions the argument that the Arizona criminal discovery provisions in their entirety violate his fifth amendment right against self-incrimination. We do not decide that question here. To begin with, Fendler's brief, written without the assistance of counsel, barely mentions the fifth amendment argument. There is no discussion by either Fendler or the prosecution of the merits of that issue. Moreover, we have no record before us on the nature of the discovery that occurred in Fendler's case. The only factual issues developed here concern the provision of the names and addresses of potential witnesses.

We do not think it appropriate to decide the fifth amendment issue in its current undeveloped posture. We do note, however, that Fendler is free to raise and fully develop his fifth amendment argument in any further proceedings conducted pursuant to our decision. *See infra* at note 17.

preclusion of witnesses is a constitutionally permissible sanction when defendants do not obey state criminal discovery rules. This question has been expressly left open by the Supreme Court and this circuit. *See, e.g., Williams v. Florida,* 399 U.S. 78, 83 n. 14, 90 S.Ct. 1893, 1897 n. 14, 26 L.Ed.2d 446 (1970) ("Whether and to what extent a State can enforce discovery rules against a defendant who fails to comply, by excluding relevant, probative evidence is a question raising Sixth Amendment issues which we have no occasion to explore. It is enough that no such penalty was exacted here."); *Robbins v. Cardwell,* 618 F.2d 581 (9th Cir. 1980), discussed *infra* at p. 1187. 1 C. Wright, *Federal Practice & Procedure: Criminal* § 256, § 436 (Supp.1982).

## I. APPROACHES TO THE USE OF THE WITNESS PRECLUSION SANCTION

### A. A PROHIBITION AGAINST USE OF THE WITNESS PRECLUSION SANCTION

Courts faced with sixth amendment challenges to witness preclusion orders have offered varied responses. The Fifth Circuit, for example, has held that "the sixth amendment forbids the exclusion of otherwise admissible evidence solely as a sanction to enforce discovery rules or orders against criminal defendants." *United States v. Davis,* 639 F.2d 239, 243 (5th Cir. 1981). A number of commentators have expressed agreement with that view. *See* Pulaski, "Extending the Disclosure Requirements of the Jencks Act to Defendants: Constitutional and Nonconstitutional Considerations," 64 *Iowa L.Rev.* 1, 53 (1978) ("using a preclusion sanction to enforce [a discovery rule] may be constitutionally excessive."); *ABA Standards for Criminal Justice* § 11–4.7(a) (2d ed. 1980) ("The exclusion sanction is not recommended because its results are capricious.... [E]xclusion of defense evidence raises significant constitutional issues."); Note, "The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense," 81 *Yale L.J.* 1342, 1364 (1972) (witness pre-

clusion violates sixth amendment right to present a defense).

There is considerable force to the Fifth Circuit's position. To begin with, courts have consistently recognized the paramount importance of a defendant's sixth amendment right to present his own defense. As the Supreme Court has emphasized,

> [t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. *This right is a fundamental element of due process of law.*

*Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967) (emphasis added). *See also* Rezneck, "The New Federal Rules of Criminal Procedure," 54 *Geo.L.J.* 1276, 1294 (1966) (courts have been "historical[ly] willing[] ... to afford defendants in criminal cases an untrammeled right to be heard."). By precluding defense witnesses from testifying, a court may substantially hinder a defendant's efforts to persuade a jury of his innocence. *See, e.g., Davis,* 639 F.2d at 243; *State v. Marchellino,* 304 N.W.2d 252, 256–57 (Iowa 1981) (preclusion of defense evidence not permitted under Iowa criminal discovery rules because of its "severity" and "possible constitutional implications."); Note, "Constitutionality of Conditional Mutual Discovery Under Federal Rule 16," 19 *Okla.L. Rev.* 417, 424 (1966).

Second, a defendant's failure to comply with discovery rules will usually have nothing to do with the probative value of the evidence to be excluded. Consequently, the "exclusion of defense evidence may lead to an unfair conviction." *ABA Standards, supra.* Such a result would obviously "defeat the objectives of discovery." *Id. See also* Weinstein, "Some Difficulties in Devising Rules for Determining Truth in Judicial

Trials," 66 *Colum.L.Rev.* 223, 237 (1966) ("Whether [a preclusion order] is sound or not (and putting aside possible constitutional objections), at the very least it would constitute a conscious mandatory distortion of the fact-finding process whenever applied."); Note, "The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense," 81 *Yale L.J.* 1342, 1361 (1972) ("The preclusion sanction alone threatens to permit the conviction of an individual who is innocent of the crime for which he is charged because of his commission of a separate wrong—the failure to comply with pretrial discovery.").[9]

In those cases where preclusion of testimony by defense witnesses is permitted, it is usually because the integrity of the evidence involved has been threatened. In cases involving defense violations of witness sequestration orders, for example, courts may preclude the witnesses involved from testifying if their testimony was tainted by the lack of sequestration. *See, e.g., Holder v. United States,* 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); *Braswell v. Wainwright,* 463 F.2d 1148 (5th Cir.1972).[10] Discovery rules, on the other hand, have no effect on the probative value of otherwise admissible evidence. As the Fifth Circuit has noted, "discovery orders are designed to prevent surprise, not to protect the integrity of the evidence sought to be presented." *Davis,* 639 F.2d at 243.

There is every reason to believe that a preclusion order is no more effective than other available sanctions. Indeed, "[s]tiff disciplinary sanctions against the offending defense attorney seem a more effective deterrent." Rezneck, "The New Federal Rules of Criminal Procedure," 54 *Geo.L.J.* 1276, 1294 (1966). Other possible remedies include continuances (which eliminate whatever surprise advantage the defense may have sought), limiting other pretrial discovery by the defendant, prosecutorial comment during trial on the defendant's failure to comply, and various contempt or

---

**9.** In a few other contexts, such as the exclusionary rule, courts have prevented the admission of probative evidence in order to deter the violation of constitutional rights. *See, e.g., Linkletter v. Walker,* 381 U.S. 618, 636–37, 85 S.Ct. 1731, 1741–42, 14 L.Ed.2d 601 (1965) ("all of the cases since *Wolf* requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action."). *See also Stone v. Powell,* 428 U.S. 465, 492–93, 96 S.Ct. 3037, 3051–52, 49 L.Ed.2d 1067 (1976) ("Despite the absence of supportive empirical evidence, we have assumed that the immediate effect of exclusion will be to discourage law enforcement officials from violating the Fourth Amendment by removing the incentive to disregard it. More importantly, over the long term, this demonstration that our society attaches serious consequences to violation of constitutional rights is thought to encourage those who formulate law enforcement policies, and the officers who implement them, to incorporate Fourth Amendment ideals into their value system. We adhere to the view that these considerations support the implementation of the exclusionary rule at trial and its enforcement on direct appeal of state-court convictions.").

In the case of discovery rules, of course, sanctions are not necessary to the enforcement of any constitutional rights. To the contrary, the preclusion sanction actually impairs a defendant's sixth amendment right to present a defense. *See infra* at 1187, *supra* at 1189.

**10.** *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), is another case where preclusion was permitted because the integrity of the evidence could have been affected. In *Nobles,* two eyewitnesses provided the only evidence linking the defendant with a bank robbery. On cross-examination, these two witnesses denied having made statements to a defense investigator that would have cast great doubt on their testimony. The defense then tried to call the investigator to testify concerning his interviews with the two witnesses. The trial court held that the investigator could only testify if a copy of the investigator's report (edited by the court to exclude matters not relevant to the two eyewitnesses) were turned over to the prosecution at the end of the investigator's testimony. The Supreme Court upheld the trial court's preclusion order because

> [t]he District Court did not bar the investigator's testimony. . . . It merely prevented respondent from presenting to the jury a partial view of the credibility issue by adducing the investigator's testimony and thereafter refusing to disclose the contemporaneous report that might offer further critical insights. The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth.

422 U.S. at 241, 95 S.Ct. at 2171.

criminal sanctions. *See, e.g.,* Note, "The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense," 81 *Yale L.J.* 1342, 1356–60, 1364 (1972) ("[E]ven if pretrial disclosure by the defendant is necessary, a range of alternative sanctions is available which, if implemented properly, should adequately enforce disclosure while restricting the rights of the accused less drastically."). Given the availability of such alternative means of forcing compliance with discovery orders, it would seem that preclusion orders are seldom if ever truly necessary.

Finally, use of the preclusion sanction may give rise to other significant legal issues that can be resolved only through collateral attack on the conviction. A defendant's case may be significantly hampered by a sanction imposed as the result of his counsel's negligence in failing to comply with discovery rules. As we have previously noted, "one ... question [raised by discovery sanctions] would be whether a defendant could be subject to sanctions absent any showing that he had been advised of the rules and instructed to cooperate with counsel in complying with them." *Robbins v. Cardwell,* 618 F.2d 581, 583 n. 4 (9th Cir. 1980). Preclusion places the penalty squarely upon the defendant. Where the failure to comply may have been the attorney's, use of this remedy would not only compound the constitutional problem, but would also invite a challenge to the conviction on the ground of incompetence of counsel.

## B. A BALANCING TEST

Despite the importance of a defendant's Sixth Amendment right to present a defense, the dangers of excluding relevant evidence and distorting the fact-finding process, and the availability of alternative sanctions, some state courts have argued that witness preclusion may sometimes be the only way to enforce discovery rules.

Accordingly, a number of states, including Arizona, have adopted a balancing test. *See State v. Smith,* 123 Ariz. 243, 599 P.2d 199 (1979); *State v. Mai,* 294 Or. 269, 656 P.2d 315 (1982); *State v. Roberts,* 226 Kan. 740, 602 P.2d 1355 (1979); *State v. Smith,* 88 N.M. 541, 543 P.2d 834 (1975); *State ex rel. Simos v. Burke,* 41 Wis.2d 129, 163 N.W.2d 177 (1968). *Cf. Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) (the sixth amendment right to call and examine witnesses is "not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.... But its denial or significant diminution calls into question the ultimate integrity of the fact-finding process and requires that the competing interest be closely examined.").

In cases where the preclusion sanction has been permitted under the balancing approach, courts have considered several different factors. These include the effectiveness of less severe sanctions, the impact of witness preclusion on the evidence at trial and the outcome of the case, the extent to which the prosecution will be surprised or prejudiced by the witness's testimony, and whether the violation of discovery rules was willful or in bad faith. *See, e.g., State v. Smith,* 123 Ariz. 243, 599 P.2d 199 (1979).

## II. THE TRIAL COURT ERRED BY PRECLUDING AN IMPORTANT DEFENSE WITNESS FROM TESTIFYING

This court has yet to decide the question of the constitutionality of witness preclusion as a sanction for failure to obey discovery rules. In *United States v. Barron,* 575 F.2d 752 (9th Cir.1978), we held that the trial court did not abuse its discretion by precluding the testimony of a defense alibi witness as a result of the defendant's failure to comply with Federal Rule of Criminal Procedure 12.1.[11] The *Barron* court noted that if Rule 12.1

---

11. Federal Rule of Criminal Procedure 12.1 provides that the defendant must disclose to the prosecution his intention to raise an alibi defense, the facts pertaining to that defense, and the names and addresses of any alibi witnesses who will be called. In turn, the prosecution must disclose the names and addresses of those witnesses who will be called to place the de-

is to have any teeth, trial courts must be able to impose sanctions, even the drastic one [witness exclusion] employed in this case. However, courts should impose a sanction only after a careful weighing of the interest of the defendant in a full and fair trial against the interests of avoiding surprise and delays.

*Id.* at 757.

While, at first blush, *Barron* might seem to put us on the side of those favoring a balancing test, we think it critical that we were not there considering a *constitutional* challenge, sixth amendment or otherwise, to the witness preclusion sanction. In *Barron* we said that we were applying only a traditional abuse of discretion test—one that assumes the constitutionality of the order—"[b]ecause the parties did not explore the possible Sixth amendment issues raised by the sanction." *Id.* at 757 n. 5. Thus, *Barron* is of no assistance on the constitutional question.[12]

In any event, since our decision in *Barron* we have determined that the constitutionality of witness preclusion as a sanction for failure to comply with general criminal discovery rules is an open question. In *Robbins v. Cardwell,* 618 F.2d 581 (9th Cir. 1980), we specifically considered the Arizona criminal discovery rules. After noting that Arizona permits the imposition of "extreme sanctions" such as "prohibiting testimony by a defense witness," we emphasized that "[t]he issue whether these sanctions can be applied for breach of Ariz.R.Crim.P. 15.2 without offending the confrontation clause of the sixth amendment and the right to present a defense which is implicit in the sixth amendment is a constitutional question of importance to the administra-

tion of criminal justice." *Id.* at 582. We then stated that the question had been "expressly reserved by the Supreme Court" and that it was not properly presented "for our determination" on the record before us. *Id.* Finally, we "reiterate[d] that imposition of the extreme sanctions contained in the Arizona rules would present important questions of constitutional dimensions if raised in a proper case." *Id.* at 583.

■■■ In this case, it is also unnecessary to answer the constitutional question fully. Here, we narrow the question which we leave open to a choice between a rule flatly prohibiting use of the preclusion sanction, the Fifth Circuit approach, and a balancing test similar to that advocated by some state courts. We need not now choose between these alternatives because we find that, under either of these approaches, the Arizona state courts erred in excluding the testimony of an important defense witness.

Our analysis under the balancing test follows. At the outset we emphasize that for a balancing test to meet Sixth Amendment standards, it must begin with a presumption against exclusion of otherwise admissible defense evidence. No other approach adequately protects the right to present a defense. *See Washington v. Texas,* 388 U.S. at 19, 87 S.Ct. at 1923. With that starting point in mind, we proceed to weigh the relevant factors.[13]

We begin with the most significant factor: how important was the witness? Fendler was indicted on one count of false book entry because he allegedly overvalued four separate assets: goodwill; account acquisition and retention; branch offices; and investment securities. *See State v. Fendler,* 622 P.2d at 34 n. 22. Fendler sought to call

fendant at the scene of the crime or to otherwise rebut the defense's alibi witnesses. Rule 12.1 explicitly provides that "the court may exclude the testimony of any undisclosed witnesses."

**12.** Moreover, we note that *Barron* involved a reciprocal notice-of-alibi discovery rule, Fed.R. Crim.P. 12.1, and that the Supreme Court has specifically upheld such rules—though leaving open the question of what sanctions are permissible—because of the special tendency of

unexpected alibi defenses to cause unfair surprise and lengthy trial delays. *See, e.g., Wardius v. Oregon,* 412 U.S. 470, 473, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973); *see also Barron,* 575 F.2d at 757.

**13.** Although the Arizona state courts applied a balancing test, we are not bound by the result. For reasons stated in the text of our opinion, we do not believe that the Arizona test as applied here meets the constitutional standard.

both Schaffer and Pierson to testify that his valuation of the investment securities asset was correct. They were Fendler's expert witnesses on this point. Our review of the evidence presented at the federal magistrate's hearing indicates that Schaffer's testimony, at least, could have been of substantial importance to Fendler's defense on the investment securities issue.[14]

Although Schaffer said at the magistrate's hearing that he would have preferred to examine "a minimal amount of additional data" on the valuation of the investment securities before reaching a final conclusion, he consistently maintained that he was "certain that [his] testimony would have been in a range which might have, as to the value of the bank, ... been crucial to [Fendler's] defense." Because the trial judge precluded him from testifying, it was obviously not necessary for Schaffer to make a final review of the valuation information. Nonetheless, Schaffer emphasized that he was "certain" that his testimony would have been helpful to Fendler. We see no reason to require that Schaffer's potential testimony meet any higher standard. It would be both unreasonable and illogical to require a defendant whose witness has been precluded from testifying to prove *exactly* what the witness would have said under oath. We find that Fendler's defense on the investment securities aspect of the false entry charge was severely ham-

pered by the exclusion of Schaffer's testimony.[15]

We also find that any possible prejudice to the prosecution's case was not nearly substantial enough to overcome Fendler's sixth amendment right to present a defense.[16] To begin with, Fendler argues that he was not aware that Schaffer's testimony on the valuation of the investment securities would be necessary until the prosecution's strategic emphasis became evident at trial. In any event, the prosecution was not unaware of Schaffer or of Fendler's continuing desire to have him testify. To the contrary, Fendler consistently included Schaffer's name on most of the discovery lists presented both before and during trial, including one submitted following the close of the prosecution's case. The only information the prosecution lacked was Schaffer's address. Yet as the prosecution acknowledged at the hearing before the magistrate, it knew that Schaffer was a Colorado attorney; thus, his address and phone number could have been easily obtained from various legal directories or the state bar association. Finally, the prosecution presented its own expert testimony on the investment securities question and was thus presumably not ignorant of the issues involved. *See, e.g., State v. Fendler*, 622 P.2d at 34. Any state interest in preparing for cross-examination of Schaffer or rebuttal of

---

14. The Arizona Court of Appeals also found that the testimony of Schaffer "might have been relevant" to Fendler's defense. *State v. Fendler*, 127 Ariz. 464, 482, 622 P.2d 23, 41 (App.1980). We accept this factual finding. Accordingly, for purposes of Fendler's constitutional challenge, we must presume that the testimony was relevant. However, we attach greater constitutional significance to this fact than the Arizona courts apparently did.

15. The magistrate discusses Pierson's testimony in some detail, and we agree with his conclusion that it is impossible to tell whether Pierson's testimony would have been helpful to Fendler's case. However, the magistrate incorrectly dismisses Schaffer's testimony with the comment that it was "similar in nature" to Pierson's. The district court's order denying Fendler's habeas corpus petition discusses only

Pierson's testimony; there is no mention of Schaffer. This in itself is somewhat troublesome since Fendler's defense counsel maintained at trial that he would call only Schaffer—and not Pierson—if permitted to do so.

16. The Arizona Court of Appeals found that the prosecution's case "might well have [been] prejudiced" if Schaffer had been permitted to testify. *State v. Fendler*, 127 Ariz. 464, 483, 622 P.2d 23, 42 (App.1980). We do not disagree with this finding. We note, however, that the state court did not find as a fact that the prosecution's case would have been prejudiced. Rather, the court found only a possibility of prejudice. In any event, we do not think that the limited prejudice that the prosecution might have suffered was constitutionally sufficient to overcome Fendler's sixth amendment right to present his defense.

his testimony could have been accommodated by a brief continuance.[17]

We assume that the failure to comply with the discovery orders was willful.[18] We need not decide whether the willfulness was attributable to Fendler personally. The determinative factor here is that Fendler was deprived of the testimony of a witness who was important to his defense on a material issue. That is too high a price to exact for failure to comply with discovery orders issued pursuant to general discovery rules.[19] We find that, under either of the potential standards, Fendler's sixth amendment rights were violated by the witness preclusion order.

### III. HARMLESS ERROR TEST

▆ Because the trial court's error affected substantial constitutional rights, we must determine whether the error was "harmless beyond a reasonable doubt." *See, e.g., Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Castillo,* 615 F.2d 878 (9th Cir.1980). Notwithstanding our earlier statements as to the importance of Schaffer's testimony to one part of Fendler's defense, we cannot decide the question on the basis of the record before us.

We note that Schaffer would have testified as to the valuation of only one of the four assets that made up the false entry count. There is no way to determine without a transcript of the state trial which of the four assets the jury may have thought had been overvalued or even whether there is sufficient evidence as to any of the other three. It is possible that Fendler's valuation of the investment securities asset, about which Schaffer would have testified, convinced the jury to convict him. It may also be that the prosecution's case on the investment securities asset convinced the jury that Fendler generally engaged in unethical business practices and that this in turn affected its deliberations on the other three assets. Indeed, we consider it important that the Arizona Court of Appeals analyzed the evidence regarding the four allegedly overvalued assets "taken as a whole" when determining whether there was sufficient evidence to support Fendler's conviction. *State v. Fendler,* 622 P.2d at 35.[20]

▆ We remand to the district court for a review of the trial transcript and a determination of whether the exclusion of Schaffer's testimony was harmless beyond a reasonable doubt. We also believe that the district court should appoint qualified counsel to represent Fendler in the proceedings on remand and in any further proceedings conducted pursuant to our decision here. If necessary, appointed counsel can also assist in fully developing Fendler's general fifth amendment challenge to the Arizona criminal discovery system. *See* note 8 *supra.*[21]

REVERSED AND REMANDED.

---

17. As the Arizona courts have repeatedly emphasized, the trial court "should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible." *State v. Smith,* 123 Ariz. 243, 252, 599 P.2d 199, 208 (1979); *see also State v. Gutierrez,* 121 Ariz. 176, 181, 589 P.2d 50, 55 (App.1978) (the witness preclusion sanction should only be used "in those cases where other less stringent sanctions are not applicable to effect the ends of justice.").

18. The Arizona Court of Appeals also found that Fendler "willfully failed to comply with Rule 15.2(c)." *State v. Fendler,* 127 Ariz. 464, 482, 622 P.2d 23, 41 (App.1980).

19. The phrase "general criminal discovery rules" does not apply to F.R.Crim.P. 12, which is a rule designed to deal with particular types of evidence. *See supra* at note 12. The validi-

ty of the preclusion provision of that rule is not before us.

20. We intimate no view on the outcome of the harmless error issue or on related legal questions, such as a possible need for juror unanimity as to the particular asset found overvalued. *Cf. United States v. Mastelotto,* 717 F.2d 1238, (9th Cir.1983); *United States v. Echeverry,* 698 F.2d 375 (9th Cir.1983); *United States v. Friedman,* 445 F.2d 1076 (9th Cir.1971); *Vitello v. United States,* 425 F.2d 416 (9th Cir.1970). In fact, a review of the transcript may or may not help resolve the harmless error issue. We do not believe, however, that the question should be decided in the absence of that review.

21. The dissent suggests that we have not given sufficient attention to the Supreme Court's opinion in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Because we

ALARCON, Circuit Judge, dissenting.
I respectfully dissent.

have not disagreed with any of the factual findings made by the state courts, however, the holding in *Sumner v. Mata* is irrelevant to this case.

The scope of our review of the Arizona state court decisions does not, of course, extend to the state court's findings concerning issues of fact. These findings are entitled to a "presumption of correctness" under 28 U.S.C. § 2254(d) (1976). Section 2254(d) provides that in federal habeas corpus proceedings instituted by a state prisoner, "a determination after a hearing on the merits of a factual issue made by a State court of competent jurisdiction" and "evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct" unless the federal court finds that (a) one of the seven enumerated factors listed in § 2254(d) exists; or (b) "such factual determination is not fairly supported by the [state court] record"; or (c) the habeas petitioner has established by "convincing proof that the factual determination by the state court was erroneous." *See Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

The § 2254(d) restrictions on federal court review of habeas petitions apply only to "issues of fact" as found by the state courts. The term "issues of fact" applied in the section 2254(d) context "refer[s] to what are termed basic, primary, or historical facts: 'facts (in the sense of a recital of external events and the credibility of their narrators).'" *Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963) (quoting *Brown v. Allen*, 344 U.S. 443, 506, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953) (Frankfurter, J.)); *see Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980). Section 2254(d) does not apply to federal court review of state court decisions regarding either purely legal questions or mixed questions of law and fact. *See generally Taylor v. Cardwell*, 579 F.2d 1380, 1383 (9th Cir.1978) ("While federal courts defer to proper state findings of historical fact, the federal court itself must determine the legal effect of these facts, and it must apply the proper federal legal standard in doing so."); *Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980) (mixed questions of law and fact require "the application of legal principles to the historical facts of [the] case"); *Brewer v. Williams*, 430 U.S. 387, 403, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) (*quoting Brown v. Allen*, 344 U.S. 443, 507, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953) (mixed questions of law and fact require the "application of constitutional principles to the facts as found.")); *Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963) ("So-called mixed questions of fact and law,

When the court's opinion was originally filed in this matter, I unqualifiedly con-

which require the application of a legal standard to the historical-fact determinations, are not facts" within the meaning of § 2254(d).). We are thus obligated to conduct a complete and independent review of all of the purely legal or mixed fact and law questions raised by Fendler's habeas corpus petition.

We do not disagree with the basic issues of fact as found by the Arizona state courts in this case. We differ with the Arizona courts solely regarding the *legal weight* assigned to those facts. As the Supreme Court recently affirmed, "the federal court may give different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard" in § 2254 habeas proceedings. *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982); *see Neil v. Biggers*, 409 U.S. 188, 193 n. 3, 93 S.Ct. 375, 379 n. 3, 34 L.Ed.2d 401 (1972) (deference to state court findings of fact concerning due process claims in habeas corpus action is "inapplicable ... where the dispute between the parties is not so much over the elemental facts as over the constitutional significance to be attached to them.").

In this case, then, we merely attach different constitutional weight to the basic issues of fact as found by the Arizona state courts. This approach is consistent with our constitutional and statutory duties and with the unbroken line of habeas cases endorsing independent federal review of sixth amendment fair trial questions. *See generally Dickerson v. Alabama*, 667 F.2d 1364, 1368–69 (11th Cir.), *cert. denied*, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982) ("[A]ny denial of an accused's attempt to present testimony in his behalf must be weighed against [the Sixth Amendment right to compulsory process.] The determination of whether the denial was such an abuse of discretion as to violate an accused's Sixth Amendment right is a question of law."); *Hicks v. Wainwright*, 633 F.2d 1146 (5th Cir.1981) (same); *Panzavecchia v. Wainwright*, 658 F.2d 337, 339 n. 2 (5th Cir.1981) ("If not a pure question of law, the issue of prejudice [to an accused's right to a fair trial] is at least a mixed question of law and fact because, in order to determine the presence of prejudice amounting to a denial of due process, the constitutional standard must be applied to the facts of the instant case."); *cf. Vela v. Estelle*, 708 F.2d 954, 961 (5th Cir.1983) ("whether counsel rendered effective assistance [under the standards dictated by the Sixth and Fourteenth Amendments] is a mixed question of law and fact"; citing cases); *Smith v. Perini*, 723 F.2d 478, 481 (6th Cir.1983) ("The ultimate finding of whether the identification was sufficiently reliable so as not to offend appellant's rights under the due process clause is, of course, a question of law, subject to full review by this court.").

curred. After reading the petition for a rehearing, I became concerned that I may have erred. I then suggested that we should request a response to the petition for a rehearing. My colleagues disagreed.

I voted for a rehearing in this matter because I am now convinced that the opinion of the court is fatally flawed and that I was wrong to join in their number.

I now dissent on two grounds:

One. The majority has failed to perform its appellate function by declining to decide ripe federal constitutional questions properly raised on a petition for habeas corpus.

Two. The majority has instead, in excess of its jurisdiction, attempted to perform the duties of a trial court by making findings of fact contrary to those of the Arizona courts and in direct conflict with 28 U.S.C. § 2254(d) and *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

## I.

*The Unanswered Constitutional Question.*

The issue on this appeal is quite clear. Fendler did not comply with Arizona's reciprocal discovery rules which require disclosing the names of defense witnesses. As a sanction for Fendler's wilful disobedience, the Arizona court excluded the testimony of the unnamed defense witnesses.

Fendler has asked this court to hold that a state's rule which excludes the testimony of a defense witness for wilful noncompliance with reciprocal discovery rules violates an accused person's sixth amendment right to present a defense. In their petition for a rehearing, appellees also urge us to "resolve this constitutional issue."

The constitutionality of witness preclusion is an open question in this circuit. There are sound reasons for refusing to decide a constitutional question. None of these are present in this matter.

In *United States v. Barron*, 575 F.2d 752 (9th Cir.1978), we held that the trial court had not abused its discretion in excluding the testimony of defense witness. Barron did not argue that this sanction was unconstitutional. For that reason we noted: "Because the parties did not explore the possible Sixth Amendment issues raised by the sanction, we have limited our analysis solely to a determination of whether the district court abused its discretion in the circumstances of this case." *Barron*, 575 F.2d at 757 n. 5.

In *Robbins v. Cardwell*, 618 F.2d 581 (9th Cir.1980), we affirmed the denial of habeas corpus relief on a case which also involved an order of an Arizona state court that prohibited a defense witness from testifying because the defendant failed to disclose the names of witnesses. Before this court, the petitioner in *Robbins* argued that the exclusion order offended the sixth amendment. We refused to consider this issue. We explained our inaction as follows: "We reject the argument that this issue is presented for our determination on the record in this case." *Robbins*, 618 F.2d at 582.

Thus, in *Barron*, we did not reach the constitutional question because it was not raised. In *Robbins*, we abstained because, while the issue was raised on appeal, we concluded that the *record* did not permit us to act on the constitutional question. In the matter before us, we have been asked by both sides to decide the constitutional question presented by the preclusion sanction, and a proper record was made below to permit us to decide this controversy. Accordingly, I cannot come up with a compelling reason why we should place the burden of deciding this important constitutional question on other appellate shoulders. The majority has offered no explanation for its reticence. The majority is content, instead, to present us with elaborate dictum summarizing the forthright positions taken by other courts faced with this same constitutional question and marshaling the arguments which favor the rule adopted by the Fifth Circuit in *United States v. Davis*, 639 F.2d 239, 243 (5th Cir.1981).

A court faced with the constitutional issue presented to us by these facts has at least three choices. It can decide:

One. The sixth amendment does not bar the exclusion of a witness' testimony where there has been a deliberate violation of a discovery rule.

Two. The sanction of witness preclusion is permissible under the sixth amendment if the trial court has balanced the competing interests.

Three. The sixth amendment forbids the exclusion of evidence as a sanction to enforce discovery rules or orders.

The majority tells us that "[t]his court has yet to decide the question of witness preclusion as a sanction for failure to obey discovery rules." (at 1187). Later, the court states: "In this case, it is also unnecessary to answer the constitutional question fully" (at 1188).

The majority, without discussing the merits of the first alternative, i.e., witness preclusion is permissible as a sanction without balancing the competing interests, proceeds to "narrow the question we leave open" (at 1188) to a choice between the second and third alternatives. The opinion then states: "We need not now choose between these two alternatives because we find that under either of these approaches, the Arizona state courts erred in excluding the testimony of an important defense witness" (at 1188). In spite of this claimed neutrality, the majority spends considerable time advocating the merits of the third alternative. (at 1185–1187).

Thereafter, while the court insists it has decided no constitutional question, it, nevertheless, proceeds to apply the balancing test to this case and finds error which "affected substantial constitutional rights" (at 1190).

I would reject the rule adopted by the Fifth Circuit in *Davis* which forbids the exclusion of a witness' testimony as a sanction for a failure to comply with a discovery rule. I would instead adopt a balancing test and hold that the exclusion of the testimony of a witness as a sanction for the violation of a discovery rule, is not violative of the sixth amendment where the trial court has closely examined the competing interests. *See State v. Smith,* 123 Ariz. 243, 599 P.2d 199 (1979); *State v. Mai,* 294 Or. 269, 656 P.2d 315 (1982); *State v. Roberts,* 226 Kan. 740, 602 P.2d 1355 (1979); *State v. Smith,* 88 N.M. 541, 543 P.2d 834 (1975); *State ex rel. Simos v. Burke,* 41 Wis.2d 129, 163 N.W.2d 177 (1968). The rule adopted by the Fifth Circuit is inconsistent with the view expressed by the Supreme Court in *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In *Chambers,* the Supreme Court stated:

> Of course the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process, (citation omitted). But its denial or significant elimination calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined. 410 U.S. at 295, 93 S.Ct. at 1046.

The state has a "legitimate interest" in enforceable reciprocal discovery rules. In *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Supreme Court noted: "[T]he State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." 399 U.S. at 81, 90 S.Ct. at 1896.

We applied the balancing test in reviewing the exclusion of an alibi interest in *United States v. Barron,* 575 F.2d 752 (9th Cir.1978). There, we said:

> The rule [Fed.R.Crim.P. 12.1—Notice of Alibi] also serves to present trial delays which might otherwise be necessary to permit a *surprise witness* or alibi defense. (citation omitted). If these reasons are to be effectuated and the rule is to have any teeth, trial courts must be able to impose sanctions, even the drastic one imposed in this case [exclusion of an alibi witness]. However, courts should impose the sanction only after a careful weighing of the interest of the defendant in a full and fair trial against the interests of avoiding surprise and delays. 575 F.2d at 757 (emphasis added).

The analysis we employed in *Barron* fits squarely within the principles expressed in *Chambers v. Mississippi* concerning the balancing of competing interests.

It should be noted that the Fifth Circuit in *Davis* failed to cite or discuss the Supreme Court's earlier decision in *Chambers v. Mississippi*. This may explain its failure to consider adoption of the balancing test.

## II.

*Fact Finding in Excess of Jurisdiction.*

In this matter, the Arizona state court balanced the competing interests of the parties and found that exclusion of the witness' testimony was the only effective remedy under all the circumstances of this case. These factual findings were reviewed by the Court of Appeals for Arizona in *State v. Fendler*, 127 Ariz. 464, 622 P.2d 23 (App. 1980). The Court of Appeals of Arizona found that "the trial court acted properly in precluding the witness' testimony." 622 P.2d at 42.

No contention has been made that the fact finding procedure employed by the Arizona courts was not adequate to afford a full and fair hearing. Fendler failed to meet his burden of persuading the district court by convincing evidence that the factual determinations of the Arizona courts were erroneous. 28 U.S.C. § 2254(d)(8).

In the face of the factual findings of the Arizona courts and the failure of the petitioner to meet his burden in the federal district court, my colleagues have proceeded to make contrary findings of fact in spite of the fact that they admit they have not examined the transcript of the state court proceedings (at 1182–1183).

In *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the Supreme Court vacated a judgment of this court because this court exceeded its limited review under 28 U.S.C. § 2254 by making findings which were "considerably at odds with the findings made by the California Court of Appeal." 449 U.S. at 543, 101 S.Ct. at 767. In *Sumner v. Mata*, the court held that we had failed to apply the "pre-sumption of correctness" to factual determinations made by the state courts as compelled by § 2254(d). The Court noted that this court "reached a conclusion which was in conflict with the conclusion reached by every other state and federal judge after reviewing the exact same record." 449 U.S. 548–549, 101 S.Ct. at 769–70. The majority protests at great length in footnote 21 that it has not violated *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) by engaging in impermissible fact finding. Yet, in spite of this disclaimer, the court's analysis begins with the factual question "how important was the witness [Schaffer]" at 1188. The court then proceeds to weigh Schaffer's testimony presented before the magistrate to bolster its legal conclusion that constitutional error has occurred. Later, the majority reaches the factual conclusion that "[a]ny state interest in preparing for cross examination or rebuttal of his testimony could have been accommodated by a brief continuance." At 1189–1190. There is nothing in the record in the state proceedings or the federal habeas corpus hearing which would support this purely factual speculation.

The majority has also ignored the requirement of § 2254(d) that the applicant who challenges the sufficiency of the evidence adduced in the state court proceedings "shall produce that part of the record pertinent to a determination of the sufficiency of the evidence." Here, the majority has determined, in the absence of any record, that the prosecution's interests would have been accommodated by a brief continuance, without considering the Arizona Court of Appeals discussion of the impact on the prosecution which would have flowed from the "tardiness of appellant's claim." 622 P.2d at 42.

This court has acted in excess of its limited jurisdiction under § 2254(d) in making factual findings contrary to those made by the Arizona courts without even reading the record made before that court to determine its fairness and adequacy.

CONCLUSION.

I would affirm the district court's denial of Fendler's habeas corpus petition. The Court of Appeals of Arizona has found that Fendler's rights to present a defense were properly balanced with the state's legitimate interest in enforcing reciprocal discovery. That finding is presumed correct under *Sumner v. Mata* and § 2254(d). The majority has not only declined to decide the constitutional issue it was asked to address, but it has also ignored completely its responsibility under *Sumner v. Mata* and § 2254(d) to refrain from making findings contrary to those made by the Arizona courts.

The majority explained its failure to choose between the balancing test suggested by the Supreme Court in *Chambers v. Mississippi* and the contrary rule applied in the Fifth Circuit because "under either of these approaches, the Arizona state courts erred." This conclusion is simply wrong under *Sumner v. Mata.* This court is bound by the Arizona courts' findings, in the absence of convincing evidence, presented to the *district court,* that the factual determinations of the Arizona courts were erroneous. § 2254(d)(8). The district court was not persuaded "by convincing evidence" that the factual determinations were erroneous. The majority, without an evidentiary hearing nor a review of the state court proceedings, has determined that these findings were erroneous.

Under the principles discussed in *Sumner v. Mata* and *Chambers v. Mississippi,* and on the record before us, this court was required to conclude that no constitutional deprivation occurred in the Arizona state court proceedings.