582 So.2d 1003 (1991)
Danny TRAYLOR
v.
STATE of Mississippi.
No. 90-KA-0008.
Supreme Court of Mississippi.
June 5, 1991.
William O. Rutledge, III, New Albany, for appellant.
Mike C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
Danny Traylor was indicted by the Grand Jury of Union County for the burglary of a shed owned by Larry Bonds. Traylor appeals his conviction and sentence of seven (7) years in the custody of the Mississippi Department of Corrections, alleging three (3) errors. Because we find that error did occur in the circuit court proceedings, we reverse and remand for a new trial.

I.
In 1988 Larry Bonds employed Richard Smith and Danny Traylor to help Bonds build a house in the Pleasant Ridge area of Union County, Mississippi. Smith and Traylor also helped Bonds build a shed next to the house, in which Bonds stored various items of personal property. Among these items were a .410 gauge shotgun, and a 30.06 rifle with a camouflaged stock. In December 1988 Bonds checked the shed and noticed that the rifle and shotgun were missing. Bonds first approached Richard Smith, asking him if he or Danny Traylor had taken the guns. Smith denied any knowledge of the missing *1004 guns. The next day, December 16, 1988, Bonds proceeded to contact the Union County Sheriff's Office. The following day the sheriff's office returned Bonds' rifle to him, but was unable to recover his shotgun.
On December 21, 1988, a warrant for Danny Traylor's arrest was issued. Subsequently, Danny Traylor and Richard Smith were indicted for burglary pursuant to Miss. Code Ann. § 97-17-33 (1972).[1] Smith was also indicted as a habitual offender under Miss. Code Ann. § 99-19-83.
The first witness called by the State was Richard Smith. Defense counsel objected, alleging that he had not received notice until voir dire, immediately before the trial, that Richard Smith would be called as a prosecution witness. Smith was eventually allowed to testify.
Richard Smith was at the time of trial serving a seven-year sentence in Parchman for his involvement in the burglary of Larry Bonds' shed. Smith testified that, sometime before Thanksgiving in November 1988, he and Danny Traylor had stolen a rifle and shotgun from Larry Bonds. Smith alleged that he and Traylor were riding in Larry Bonds' pickup that night when they stopped at Bonds' house. Traylor then got out, went up to the shed that they had built, and came back with a shotgun and a rifle. Smith stated that they knew the guns were in the shed, as they had helped unload the property into the shed. The shed had a door which would close but did not have a lock. After the burglary Smith stated that Traylor sold the rifle to one Eugene Rutherford for $40.00, and he and Traylor split the money. Smith had tried to sell or pawn the shotgun with several people, but no one would take it. He finally hid the shotgun along Bratton Road, but when he went back to find it, it was gone. Smith admitted that even though he was indicted for his part in the offense at bar as an habitual offender, and could possibly have received a life sentence without parole, he had pled guilty and received a seven-year sentence. Smith denied that he had been the beneficiary of any sort of immunity/plea agreement.
Danny Traylor testified in his behalf. As to the burglary, Traylor testified that he was at the home of his girlfriend when Richard Smith stopped by in Larry Bonds' truck. Smith asked Traylor to go riding with him, so Traylor got in the truck. It was at this time that Traylor first noticed the guns behind the seat. He claimed to have never seen the guns before. Smith told Traylor that he had a gun he wanted to sell, so Traylor suggested Shirley Dixon's house. Traylor and Dixon were cousins, and Traylor stated that there were usually a lot of people hanging around Shirley's house, so for this reason he suggested that Smith might be able to sell the rifle at Shirley's. According to Traylor, Smith had already tried to sell the guns to one Junior McWilliams. Once they arrived, Traylor said that he waited in the car, while Smith took the rifle inside. When Smith came out, he told Traylor that he had sold the rifle to Eugene Rutherford for $40.00. Traylor also stated that Smith later told him that he had hidden the shotgun. Traylor denied that he got any of the $40.00. He testified that he did not realize the guns were stolen until he was arrested in December.
Junior McWilliams testified that Richard Smith came by his house in early November 1988, seeking to pawn a .410 gauge shotgun for $25.00. McWilliams refused, saying that he did not trust Smith. McWilliams talked to Smith through the screen door and did not see anyone else with him. He also did not see if anyone was in the car Smith had come in.
*1005 Larry Bonds testified, in rebuttal, that he had loaned from $85.00 to $100.00 to Danny Traylor and Richard Smith. Bonds stated that Traylor refused to repay the loan, and as a result Bonds paid Traylor off for the work he had done and told him not to come back again. Bonds denied that he had offered to make Richard Smith's bond, but did say that he had given Smith a job so that he could get out on bond.

II.
Discovery began in this case with Danny Traylor's Motion for Discovery, filed on March 21, 1989. Among the provisions of the request were the following:
(2) The substance of any statements, oral or recorded, which the State intends to offer in evidence at trial which were made by the Defendant, or by any other person, whether before or after arrest, in response to interrogation by any person then known to said Defendant or to the State agent.
(6)(c) Names and addresses of any and all potential State witnesses whom Defendant might be required to cross-examine in a trial pursuant to the indictment.
(7) To furnish the Defendant with a copy of all written and recorded statements relative to this case of any and all persons whom the State plans to call as witnesses, together with the criminal record, if any, of such witnesses.
The State complied first on June 2, 1989, supplying the names of four witnesses. Richard Smith's name was not included. The State supplemented its discovery on August 11, 1989, listing the same four witnesses as before.
On November 14, 1989, two days before trial, and in response to an undated petition for writ of habeas corpus, an order for writ of habeas corpus and the writ itself were issued in order to bring Richard Smith from Parchman to Union County.
On November 15, Danny Traylor filed a motion to compel, seeking in part "[a]ny written or oral statements in the possession of the State or which the State has knowledge of which were made by anyone regarding the Defendant."
At the pretrial hearing on November 15, defense counsel specifically asked for "any statements you have of the co-defendant," Richard Smith. The prosecutor appeared to be surprised by the request, but agreed to supply Smith's statement.
Trial began on November 16. The first witness called by the State was Richard Smith. Defense counsel objected, alleging that he had not received notice until voir dire, immediately before the trial, that Richard Smith would be a witness in the trial. The prosecutor stated that he had informed defense counsel on the Tuesday November 14 that he intended "to use Richard Lee Smith; that I was having him brought back by writ." The prosecutor further stated that on November 15 he informed defense counsel that he would call Smith. Defense counsel denied this, reiterating what he had said earlier. Defense counsel went on to say that the prosecutor had told him, "we don't need Richard Smith; we're not going to use him." The trial court ordered that defense counsel should have "a reasonable time" to interview Smith. Before defense counsel left to interview Smith, the following exchange took place:
BY MR. RUTLEDGE: Your Honor, for the record could I, as an exhibit to his argument right here, could I tender as an exhibit the discovery provided to me by the State?
BY THE COURT: It's in the file. It's already a part of the record. If there is something else you want to make, you can. Take 10 or 15 minutes, Mr. Rutledge?
BY MR. RUTLEDGE: I have no idea. I've never talked to him in five years. I'll do my best.
BY THE COURT: Tell the jury we're going to have an extended recess; and if they want to leave the room, they can. They can leave the jury room, but probably at least 15 minutes.
(A break was taken)
(The jury was brought in.)
BY MR. RUTLEDGE: Your Honor, could we approach the bench.

*1006 (A bench conference was had.)
BY THE COURT: He has renounced his motion, but you've informed me you have interviewed the witness.
BY MR. RUTLEDGE: But I would like for you to put in the record I need additional time to follow through on the result of the interview which I have not been afforded.
BY THE COURT: As far as what?
BY MR. RUTLEDGE: Regarding the other parties and the times which Mr. Smith told me which I won't have an opportunity to do this during this trial.
BY THE COURT: Mr. Robinson, call your first witness.
BY MR. ROBINSON: Richard Lee Smith.
U.Crim.R.Cir.Ct.Prac. 4.06(a)(1) states:
(a) Upon written request by the defendant, the prosecution shall disclose to each defendant or to his or her attorney, and permit him or her to inspect, copy, test, and photograph, without the necessity of court order, the following which is in the possession, custody, or control of the State, or the existence of which is known, or by the exercise of due diligence may become known, to the prosecution:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved, of each such witness and the substance of any oral statement made by any such witness; ... .
Danny Traylor claims a violation of 4.06. "Discovery, to be sufficient, must be made at a time far enough in advance of trial to give the defense a `meaningful opportunity' to make use of it." Inman v. State, 515 So.2d 1150, 1153 (Miss. 1987) (quoting Stewart v. State, 512 So.2d 889, 892 (Miss. 1987)). The State denies any violation, but agrees that the trial court followed the correct procedure under Box v. State, 437 So.2d 19 (Miss. 1983) (Robertson, J., specially concurring), and its progeny. The Box guidelines were recently provided once again in Kelly v. State, 553 So.2d 517, 520 (Miss. 1989):
1. Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
2. If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
3. If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.
In this case defense counsel objected. He was given a period of indeterminate length to interview Richard Smith. After this opportunity for familiarization, he requested a continuance, or "additional time to follow through on the result of the interview which I have not been afforded." The trial court denied the request. In Reuben v. State, 517 So.2d 1383 (Miss. 1987), defense counsel filed a motion for discovery more than one month before trial. The prosecution complied with the name of its primary witness on Friday, three days before trial was to start on Monday. "The question of whether defendant had a reasonable opportunity to prepare to confront the State's evidence at trial depends upon the particular facts and circumstances of each case." Reuben, 517 So.2d at 1386. Reuben's conviction was reversed under the facts of that case.
Also instructive is Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986), which provided:
Where the state is tardy in furnishing discovery which it was obligated to disclose, the defendant is entitled upon request to a continuance postponement of the proceedings reasonable under the circumstances. Henry v. State, 484 So.2d *1007 1012, 1014 (Miss. 1986); McKinney v. State, 482 So.2d 1129, 1131 (Miss. 1986); Cabello v. State, 471 So.2d 332, 343 (Miss. 1985); Box v. State, 437 So.2d 19, 26 (Miss. 1983) (Robertson, J., concurring). By no means does this mean invariably that the defendant will be entitled to a continuance until the next term of court. There will no doubt be cases where postponement of a day or two, or in some cases, of an hour or two, will suffice.
Under the facts of this case we find first that there was, however inadvertent, a violation of 4.06 on behalf of the State. Assuming for the sake of argument that the State's version of the events making up discovery is true, defense counsel was informed that Richard Smith would be called as a witness two days before trial. Smith was not brought into Union County until the day before trial. Defense counsel received a copy of Smith's statement the day before trial, despite a request made seven months earlier. The prosecution argued at trial that Smith had been in Parchman for some time, and defense counsel had had ample opportunity to interview him. This ignores the fact that the prosecutor did not decide to call Smith until just before trial. We cannot hold defense counsel derelict for failing to interview Smith six months beforehand where the prosecution did not decide to call him as a witness until two days before trial.
The next question is whether, under Foster, defense counsel had a reasonable opportunity to prepare to meet Smith's testimony. First, there is nothing in the record which informs us as to how long defense counsel took to interview Smith. Second, we must consider the nature of Smith's testimony. He was the only eyewitness to the crime, the only witness who could place Danny Traylor at the scene of the crime and in possession of the stolen property. We find that under these circumstances, the trial court erred in refusing defense counsel's request for additional time. That refusal amounts to reversible error in this case.

III.
Danny Traylor offered Instruction D-7, which stated:
The Court instructs the Jury that each one of you has a duty in this case to decide the issues for yourself. After considering the evidence and the instructions and after fair consultation with your fellow jurors, if any one of you has a reasonable doubt of Danny Traylor's guilt, it is your duty not to change your vote merely to agree with your fellow jurors but to favor a verdict of not guilty so long as you believe that there is reasonable doubt.
When considering this instruction, the following exchange took place:
BY THE COURT: The court will give a 12 person jury instruction. Do you want to withdraw this one?
BY MR. RUTLEDGE: Yes, sir.
BY THE COURT: Withdrawn.
There is no record of the content of any "12 person" instruction included in this record. Both the prosecutor and defense counsel affirmatively agreed that the trial court should orally instruct the jury in this area. We discuss this point because defense counsel argued in his post-trial motion for new trial, and here on appeal, that one of the jurors was confused by the oral instruction and did not realize that anything other than a unanimous verdict was allowed. The juror's testimony at the hearing on the motion for new trial confirms this.
Miss. Code Ann. § 99-17-35 (1972) states that "[a]ll instructions asked by either party must be in writing, and all alterations or modifications of instructions given by the court or refused shall be in writing, and those given may be taken out by the jury on its retirement." To the same effect is Unif.Crim.R.Cir.Ct.Prac. 5.03, which states in part that "[t]he circuit judge may instruct the jury. His instructions shall be in writing and shall be submitted to the attorneys who shall, in accordance with this rule, dictate their specific objections into the record." The statute and rule are mandatory in nature, and one of the principal reasons for both is to avoid the situation *1008 we have before us. We find that, regardless of who agrees to the procedure, oral jury instructions are not to be allowed. An oral instruction will be treated by this Court on appeal as a nullity. Kelly v. State, 95 So. 690 (1923), and any other decisions to the contrary are expressly overruled. The judgment of the circuit court is reversed and remanded for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building or private room or office therein, ship, steamboat, flatboat, railroad car, automobile, truck or trailer in which any goods, merchandise, or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering in the day or night time, any building within the curtilage of a dwelling house, not joined to, immediately connected with or forming a part thereof, shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.