647 So.2d 699 (1994)
Garvin Leonard TUCKER
v.
STATE of Mississippi.
No. 93-KA-00120.
Supreme Court of Mississippi.
December 15, 1994.
*700 George T. Kelly, Greenville, for appellant.
Michael C. Moore, Atty. Gen., Jean Smith Vaughan, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and SMITH, JJ.
SMITH, Justice, for the Court:
Garvin Leonard Tucker was found guilty of robbery after a trial on October 21, 1993 in the Circuit Court of Washington County, Mississippi. On the day of trial, Tucker advised his attorney that he wanted to call his mother and an investigator with the sheriff's department to testify that the person who actually committed the crime was Freginald Hicks, Tucker's brother, rather than Tucker. Tucker's attorney, George T. Kelly, Jr., upon being advised of these witnesses by Tucker, promptly told the assistant district attorney that Tucker's defense would be mistaken identity, requiring the testimony of these newly revealed witnesses. Kelly also showed the prosecutor pictures of Tucker and Hicks that Kelly intended to offer as evidence of their resemblance to each other. The prosecutor then interviewed Tucker's mother before the issue was raised by the State during trial.
The trial proceeded as scheduled and at the conclusion of the State's case in chief, when Kelly announced to the court who his witnesses would be, the State objected to these two witnesses being allowed to testify.
The trial court determined that Tucker's witness testimony presented an alibi, and excluded the testimony based upon Rule 4.07 of the Uniform Rules of Circuit Court Practice. The court also held that Tucker had violated Rule 4.06 by failing to give proper discovery.
Tucker was convicted and sentenced to serve a term of 10 years in the custody of the Mississippi Department of Corrections. Tucker's motion for J.N.O.V. or a new trial was denied. Aggrieved, Tucker appeals to this Court citing a single issue:
WHETHER THE TRIAL COURT ERRED BY NOT ALLOWING THE APPELLANT, TUCKER, TO CALL HIS MOTHER AS A WITNESS TO SUPPORT HIS DEFENSE OF MISTAKEN IDENTIFY WITHOUT AFFORDING THE PROSECUTION A REASONABLE OPPORTUNITY TO REVIEW THE NEW INFORMATION.
A thorough review of the record reveals that the trial court did not follow the guidelines *701 for evaluating discovery violations under Rule 4.06. The trial court should have applied the same procedure required of the State, as set out in Traylor v. State, 582 So.2d 1003 (Miss. 1991), when there is a violation of discovery by the defense. Although the State objected initially to the witnesses, ultimately the prosecutor indicated that "if Mr. Kelly wants to try to question identity, that's fine." However, the prosecutor did not relinquish his objection to the admission into evidence of the arrest record of Freginald Hicks. Hicks' record was clearly irrelevant evidence. The prosecutor and Tucker's attorney obviously recognized this Court's criteria as set out in Traylor, but the trial court ignored the evaluation procedure and arbitrarily imposed upon Tucker the severe penalty of exclusion of his two witnesses.
The trial court without request of the State reasoned that Tucker had violated Rule 4.07. There was no demand by the State for notice of an alibi defense, hence Rule 4.07 was inapplicable. Additionally, Tucker's attorney clearly stated that the proposed defense to be offered through his witnesses was that of mistaken identity, not alibi. Tucker did not claim that at the time of the commission of the crime, he was at a different place so remote or distant that under such circumstances he could not have committed the robbery. Tucker's defense was simply that it was Hicks, his brother, who committed the crime, rather than Tucker  a classic case of mistaken identity. The trial court erred in applying Rule 4.07 to this case.
The net result of the trial court's ruling disallowing Tucker's witness was to deny Tucker a fair trial. Tucker was compelled to testify in order to get a semblance of the issue of mistaken identity to the jury. The State's argument that Tucker placed his mistaken identity theory before the jury by his own testimony is rejected. The trial court erred in prohibiting Tucker's corroborating witnesses from testifying. Tucker was compelled to testify at that point in order to place his theory of defense before the jury. Consequently, we must reverse and remand for a new trial.

FACTS
Garvin Leonard Tucker entered an Exxon Service Station on May 2, 1992 and robbed and assaulted the employee, Methel Johnson. Tucker took $35.00 dollars from the cash register. Tucker was identified from the store's surveillance video camera by the Crime Stopper's program. Johnson later identified Tucker from a photographic lineup. Tucker was read his rights and signed a statement of confession to the crime.
Macon Moore is an investigator with the Greenville Police Department. He was informed that the suspect in the robbery was Garvin Tucker. He traveled to Hollandale to photograph and fingerprint Tucker, and put together a photographic line-up. An arrest warrant was issued and Tucker was picked up at a later time. Tucker was read his Miranda rights and subsequently gave a statement which was an exact description of the events before and during the robbery.
Methel Johnson testified about the events of the early morning of the robbery. Johnson, an Exxon employee, was about to go outside at 2:00 a.m. that morning to do some work before closing the store. She stated that Tucker drove up and questioned her as to whether he had time to buy some beer. At that point, someone else drove up and Tucker asked Johnson where the bathroom was located. He went to the bathroom, returned after the other customer had left, and then asked for some potato chips. The next thing Johnson remembered was being grabbed and shoved onto the counter and then shoved to the floor. Tucker asked for the money and left. Johnson identified Tucker at trial. Johnson also identified Tucker in the photographs.
The State rested its case and the defense was denied a directed verdict. Tucker's attorney, Kelly, requested to speak to his witnesses. When the prosecutor asked Kelly how many witnesses he would use, Kelly stated possibly three: Tucker's mother, an investigator from the Sheriff's department, and possibly Tucker. All would testify that Tucker did not rob the Exxon station, but rather it was his brother, Freginald Hicks, who had a criminal record. The investigator from the Sheriff's office would support Tucker's *702 stipulation. Tucker believed that he would be put on probation, therefore initially he did not mind taking the rap for Hicks. The district attorney objected to these witnesses stating that, "it's been since 10:30 or 11:00 that I discovered he might be trying to imply in his defense that it was the defendant's brother who did this." Kelly had been advised by Tucker the morning of trial about the mistaken identity situation and Tucker also furnished Kelly with photographs of both Tucker and Hicks to show their resemblance. Kelly promptly advised the prosecutor that he would call these witnesses at trial and also showed him the pictures of Hicks that he would attempt to introduce as additional evidence. The prosecutor also interviewed Tucker's mother at that time.
After the objection by the State, the judge stated that he believed Tucker was presenting an alibi as his defense, but Tucker had not complied with Rule 4.07. The rule requires a party to give ten (10) days notice when offering an alibi. Kelly stated that Tucker's defense was "mistaken identity", not alibi. The prosecutor did not relinquish his objection to the introduction of Hicks' criminal record because he believed it to be irrelevant. However, the prosecutor did state that, "[I]f Mr. Kelley wants to try to question identity, that's fine." The prosecutor never made a written demand, or other demand of notice of alibi upon Kelly.
During the colloquy with the trial court concerning this issue, the prosecutor never claimed unfair surprise, undue prejudice, nor sought a continuance. It was the court who furnished the State's argument. The trial court stated that the prosecution could not be prepared to rebut the testimony since they had no time to investigate whether or not Hicks may have been in jail at the time of the crime. The trial court further stated that since the State had rested its case, it was at a disadvantage because the State could not determine any other facts about Hicks. The prosecution did not object to Tucker's testifying. The trial court ruled there would not be testimony concerning Hick's record because Hick's record was irrelevant in this case. The trial court also excluded Tucker's witnesses as improper discovery under Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice.
Tucker's testimony revealed that he lived in Hollandale, Mississippi, and worked at the Delta and Pine Land in Hollandale for two years. Tucker stated that he was 5'9" and weighed about 217 pounds. He denied committing the crime, testifying that his brother, Freginald Hicks, committed the crime, and a "whole lot of people mistake us for twins." Tucker testified that Hicks told him that he (Hicks) committed the crime. Tucker only had one DUI and no criminal record. He said that he had agreed to take the rap for his brother since Hicks had a substantial criminal record. When Tucker realized that he would serve time, he testified "I said, `Forget that ...'" Tucker stated that he had a wife and two kids to provide care. Tucker further testified that he was paid on May 2 and he "didn't need to rob nothing." Tucker also stated that he was with Freginald that Friday night, but that he did not learn of the robbery until later. Tucker stated that he did not tell the police the truth because he thought that he would only get probation.

DISCUSSION

WHETHER THE TRIAL COURT ERRED BY NOT ALLOWING THE APPELLANT, TUCKER, TO CALL HIS MOTHER AS A WITNESS TO SUPPORT HIS DEFENSE OF MISTAKEN IDENTITY WITHOUT AFFORDING THE PROSECUTION A REASONABLE OPPORTUNITY TO REVIEW THE NEW INFORMATION.
The State argues that a motion for a new trial is granted by the sound discretion of the trial judge. The jury verdict is set aside "only when the verdict is contrary to the substantial weight of the evidence," citing Leflore v. State, 535 So.2d 68, 70 (Miss. 1988); Russell v. State, 506 So.2d 974, 977 (Miss. 1987); Burt v. State, 493 So.2d 1325, 1328 (Miss. 1986). Further, it is necessary to overturn the trial court verdict when the verdict is against the overwhelming weight of the evidence. To let it stand "would be to sanction an unconscionable injustice," citing Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983).
*703 Tucker argues that the trial court's ruling did not comply with Rule 4.06 guidelines to evaluate discovery violations. Tucker citing Traylor v. State, 582 So.2d 1003 (Miss. 1991) in support. Tucker also argues that Rule 4.07 does not apply to this case because the State did not demand to be notified about an alibi defense, and because his defense was clearly mistaken identity rather than alibi. Because the court refused the testimony of Tucker's witnesses based upon discovery violations, Tucker argues he was forced to testify "in order to put the evidence before the jury." Therefore, Tucker claims his Fifth Amendment Constitutional rights were violated.
This Court set forth guidelines in Box v. State, 437 So.2d 19 (Miss. 1983) which have been added to Rule 4.06. Rule 4.06(c)(1) reads, in part:
(c) If the defendant requests discovery under this rule, the defendant shall, subject to constitutional limitations, promptly disclose to the prosecution and permit it to inspect, copy, test, and photograph, the following information and material which corresponds to that which the defendant sought and which is in the possession, custody, or control of the defendant or his or her counsel, or the existence of which is known, or by the exercise of due diligence may become known, to the defendant or his or her counsel:
(1) Names and addresses of all witnesses in chief proposed to be offered by the defendant at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved, of each witness, and the substance of any oral statement made by any such witness;
Tucker was required to comply with 4.06(c)(1) by providing the names of the "witnesses in chief proposed to be offered" at trial. Kelly only learned of these witnesses and the mistaken identity issue from Tucker on the morning of trial. Kelly promptly advised the prosecutor of the witnesses and showed him photographs of both Tucker and Hicks which Kelly planned to introduce during Tucker's defense. The prosecutor also interviewed Tucker's mother approximately one and a half to two hours prior to the issue first being considered by the trial court.
The Rule 4.06 further provides that when a party fails to abide by the rule, the court can either permit discovery of material not previously disclosed, grant a continuance, or "enter such other order as it deems just under the circumstances." (R. 4.06) (i) Providing that one of the parties objects, the court can grant the party a "reasonable opportunity to interview the newly discovered witnesses." (4.06) (i)(1) Should one party argue prejudice or unfair surprise, the court can then exclude the evidence, grant a continuance long enough for the party to evaluate the evidence, or grant a mistrial. (R. 4.06) (i)(2). The State had already been advised of the proposed witnesses, had seen the photos of Hicks, and interviewed Tucker's mother. The State certainly did not argue unfair surprise, undue prejudice, or request a continuance. The prosecutor even stated "[I]f Mr. Kelley wants to try to question identity, that fine," apparently withdrawing his objection as long as Kelley proceeded strictly on the identity issue. The trial judge simply held for the State, setting out in his ruling supposed material and prejudicial factors that in his opinion affected the State's ability to be adequately prepared for trial. None of these factors cited by the trial judge were ever argued by the State. The defense attempted to introduce Tucker's mother and the investigator of the Sheriff's department as witnesses during the trial. The prosecutor knew Tucker's mother, and had some notice that she was a proposed witness. He had the opportunity to determine the validity of the testimony due to his prior interview with Tucker's mother. Although the prosecutor was advised that the deputy sheriff was a probable witness, there appears to have been no effort by the State to determine background information concerning Hicks, such as where he was the night of the robbery and his criminal record, etc.
This Court's rulings provide guidance on Rule 4.06 discovery violations. The Court has stated that the guidelines established in Box v. State, 437 So.2d 19 (Miss. 1983), apply equally to both parties at trial. (See Coates v. State, 495 So.2d 464 (Miss. 1986)). Rule *704 4.06(i)(2) gives the court discretion whether to grant the continuance, if requested, or exclude the evidence. In Harrison v. State, 635 So.2d 894 (Miss. 1994), this Court, after having considered the requirements of Rule 4.06, stated if the party believes that it may be prejudiced by the evidence, it must request a continuance. Failure to do so constitutes a waiver. Id. at 898. See also Kelly v. State, 553 So.2d 517, 521 (Miss. 1989); Traylor v. State, 582 So.2d 1003 (Miss. 1991). Neither party requested a continuance. The State was required to make such request if claiming unfair surprise or undue prejudice.
Tucker's argument that the court did not follow the "guidelines for evaluating discovery violations" has merit. The trial court recognized that discovery had occurred, that discovery is reciprocal, and that Tucker had been afforded a preliminary hearing. Yet, the trial court ignored its responsibilities for evaluating discovery violations as set out in Box, Kelly, Traylor and Harrison. The court stated "all of a sudden on the day of trial the Defendant, apparently unknown to the defense attorney, comes up with a new theory of defense which is not presented to the District Attorney until the trial is under way, and the Court would note that Rule 4.07 dealing with alibi requires ten days notice on the alibi." This issue of alibi was wholly raised of the court's own volition.
In situations somewhat similar to the case sub judice, allowing a defendant to proceed when discovery violations regarding his witnesses have occurred might create an unfair tactical advantage. In Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1987), the United States Supreme Court considered whether the trial court's refusal to allow undisclosed witnesses to testify violated the constitutional right of presenting favorable witness testimony. The Court found no constitutional error. The Court believed there is a presumption that "there is something suspect about a defense witness who is not identified until the 11th hour has passed." Id. at 414, 108 S.Ct. at 655. The Court stated that while a defendant has a fundamental right to offer the testimony of witnesses, it "cannot automatically and invariably outweigh countervailing public interest." Id. The Court considered the integrity of the adversary process, presentation of reliable evidence, fair and efficient administration of justice, and the potential prejudice of the truth determining function of the trial process. Id.
However, in the case at bar, Tucker's attorney, Kelly, did not learn of the witnesses and the issue of mistaken identity from Tucker until the morning of trial. Kelly promptly advised the State of this situation. There is a glaring absence of Kelly attempting to gain a "tactical advantage" over the State. Indeed, the record is devoid of any claim of unfair surprise or undue prejudice by the State. Kelly was simply following the procedures required by Rule 4.06 and this Court's appropriate case law.
Tucker argues that Rule 4.07 does not apply to this case because the State did not demand to be notified about the alibi defense. Rule 4.07 reads in part:
Upon the written demand of the prosecuting attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such other time as the court may direct, upon the prosecuting attorney a written notice of his intention to offer a defense of alibi, which notice shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon which he intends to rely to establish such alibi.
If prior to or during trial a party learns of an additional witness whose identity, if known, should have been included in the information previously furnished, the party shall promptly notify the other party or his attorney of the name and address of such additional witness.
Upon the failure of either to comply with the requirements of this rule, the court may use such sanctions as it deems proper, including:
(1) Granting a continuance;
(2) Limiting further discovery of the party failing to comply;
(3) Finding the attorney failing to comply in contempt; or

*705 (4) Excluding the testimony of the undisclosed witness.
This rule shall not limit the right of the defendant to testify in his own behalf.
Tucker is correct in his argument. Kelly promptly notified opposing counsel for the State, as the rule requires, when he first learned of the witnesses from Tucker on the morning of trial.
More importantly, Tucker's defense of mistaken identity is simply not the same as an alibi defense. Alibi, "[m]eans that at time of commission of crime charged in indictment defendant was at different place so remote or distant or under such circumstances that he could not have committed offense." Blacks Law Dictionary, Revised Fourth Edition (1968).
In Holmes v. State, 481 So.2d 319, 321 (Miss. 1985), this Court confirmed the definition of alibi by approving Holmes' instruction on that defense. The Court stated:
L.C. Holmes however submitted a proper alibi instruction, which read:
Instruction No. 4290-D-1. Alibi means elsewhere or in another place. In this case, the defendant, L.C. Holmes, Jr. is asserting the defense of alibi by saying that he was at home on Lewis Street in Marks, Mississippi, at the time when the state claims that he was somewhere else committing the crime of burglary.
Alibi is a legal and proper defense in law. The defendant is not required to establish the truth of his alibi to your satisfaction, but, if the evidence or lack of evidence in this case raises in the minds of the jury a reasonable doubt as to whether the defendant was present and committed the crime, then you must give him the benefit of the doubt and acquit him.
The State claims that Tucker got his defense of mistaken identity before the jury through his own testimony and that his mother's testimony would have been merely cumulative. The State suggests this is harmless error at best. We do not agree. Without his mother's testimony, in order to present to the jury the mistaken identity defense, Tucker was required to testify, or present no defense at all. Regardless, Tucker was entitled to his mother's corroborating testimony.

CONCLUSION
We hold that 4.07 is inapplicable to this issue. The trial court erroneously labeled Tucker's defense as one of alibi when it was clearly one of mistaken identity.
The court failed to follow the guidelines for evaluating discovery violations under Rule 4.06 and this Court's decisions of Box, Kelly, Traylor and Harrison. Discovery violations must be treated the same for both the State and the defendant. George T. Kelly, Jr., Tucker's attorney, followed Rule 4.06 and this Court's guidelines by promptly notifying the prosecutor when he first learned of Tucker's new witnesses. The trial judge, on the State's behalf, raised various factors supposedly affecting the State's ability to receive a fair trial if Tucker's witnesses were allowed to testify. The State merely raised a general objection to these witnesses, never once complaining of unfair surprise or undue prejudice. More importantly is it appears that the State withdrew it's objection to the witnesses' testifying if Tucker's defense was only questioning identity. This statement by the prosecutor was totally ignored by the trial judge who refused to allow Tucker's mother to testify.
The denial of Tucker's witnesses unfairly required Tucker to testify in order to put his theory of the case, a mistaken identity defense, before the jury, or alternatively, he could offer no defense at all. Tucker was entitled to his corroborating witness.
We reverse and remand for a new trial consistent with this opinion.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
PITTMAN, J., not participating.