## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 97-KA-01488-SCT

*PATRICK LEON COLEMAN a/k/a "PAT"*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/22/1997 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DONALD RAFFERTY |
| | ANDREW EDWARD FRANZ |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED III |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/18/1999 |
| MOTION FOR REHEARING FILED: | ; denied 12/7/2000 |
| MANDATE ISSUED: | 12/09/99 |

## BEFORE PRATHER, C.J., MILLS AND COBB, JJ.

## MILLS, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Leon Patrick Coleman was convicted by a Harrison County jury of one count of selling a controlled substance, cocaine, and was adjudged an habitual offender. He was sentenced to fifteen (15) years without parole with the Mississippi Department of Corrections. Coleman appeals his conviction and raises the following issues as error:

> **I. WHETHER THE TRIAL COURT ERRED IN EXCLUDING THE TESTIMONY OF COLEMAN'S ALIBI WITNESS DUE TO FAILURE TO COMPLY WITH UNIFORM CIRCUIT AND COUNTY COURT RULE 9.05.**

> **II. WHETHER COLEMAN WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

### STATEMENT OF FACTS

¶2. Patrick Leon Coleman was charged with selling cocaine, a schedule II controlled substance, to an undercover Gulfport police officer on December 21, 1994. Coleman turned himself in and was arrested on

this charge on January 23, 1995. In the interim between arrest and trial, Coleman had at least three lawyers, the first of whom withdrew upon allegations by Coleman that counsel had engaged in unethical conduct during plea negotiations. Trial date was reset no fewer than seven times, three times on defense's motion, three times on the court's, and once on the prosecution's. The record indicates that Coleman's right to a speedy trial was waived twice. Trial was finally begun on May 21, 1997, two years and four months after Coleman's arrest.

¶3. The undercover officer to whom Coleman allegedly sold the cocaine was Leslie Curry, then Leslie Morrow. The transaction in question was videotaped using a camera hidden in Morrow's car, though the exchange of drugs for money was not expressly visible on the tape. Morrow testified at trial that she was able to observe the suspect for approximately seven seconds. At trial, she identified Coleman as the man from whom she had purchased the drugs.

¶4. Also testifying on behalf of the State was Lieutenant Pat Pope, who processed Coleman's arrest. Pope testified that Coleman was advised of his *Miranda* rights, whereupon he voluntarily confessed to selling cocaine to Morrow. The meeting between Coleman and Pope was not videoed, nor is there any audiotape of the alleged confession. At trial, Coleman denied making a confession and averred that he was not the man depicted in the videotape, pointing to several differences in the features of the man on the tape and himself.

¶5. Coleman had wished to call to the stand as an alibi witness an old girlfriend, Tiffany Jones. The record indicates that Coleman did not notify his attorney, Donald Rafferty, of his desire to pursue this alibi until approximately one week before trial, May 15 or 16, 1997. On May 19, 1997, Rafferty hand-delivered a letter to the prosecutor's office stating that the defense was searching for Jones in the belief that she could verify Coleman's whereabouts on the day of the crime. The letter did not contain Jones's address, which was unknown at the time, nor did it contain the specific place at which the defendant was claiming to be at the time of the crime. Jones was physically located the night before the second and final day of trial and agreed to appear in court the following day as a witness on Coleman's behalf. She appeared in court, but upon hearing her testimony outside the presence of the jury, the judge excluded her as a witness because the letter notifying the State of the defense's intent to use Jones as an alibi witness did not comply with Uniform Circuit and County Court Rule 9.05.

¶6. Upon jury deliberations, several notes were sent to the judge informing him that a verdict could not immediately be reached. Consequently, a *Sharplin* charge was given the jury after one hour and forty minutes of deliberation. Eventually a verdict of guilty was reached after three and one-half hours of deliberation. Coleman's motion for a new trial was denied, and he has appealed to this Court for relief.

## DISCUSSION

**I. Whether the trial court erred in excluding the testimony of Coleman's alibi witness due to failure to comply with Uniform Circuit and County Court Rule 9.05.**

¶7. Coleman's first assignment of error challenges the circuit court's exclusion of his proposed alibi witness, Tiffany Jones. The exclusion was based upon the defense's failure to comply with Uniform Circuit and County Court Rule 9.05. Rule 9.05, in pertinent parts, provides:

Upon the written demand of the prosecuting attorney . . . the defendant shall serve within ten days . . .

upon the prosecuting attorney a written notice of the intention to offer a defense of alibi, which notice shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon which the defendant intends to rely to establish such alibi.

\* \* \*

If prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information previously furnished, the party shall promptly notify the other party or the party's attorney of the name and address of such additional witness.

Upon the failure of either party to comply with the requirements of this rule, the court may use such sanctions as it deems proper, including:

1. Granting a continuance;

2. Limiting further discovery of the party failing to comply;

3. Finding the attorney failing to comply in contempt; or

4. Excluding the testimony of the undisclosed witness.

**\*\*\***

¶8. A written demand for notice of an alibi witness was made by the State on April 13, 1995. Notification to the State of the defense's intent in using Jones as an alibi was not delivered until May 19, 1997, when the defense hand-delivered a partial notice by letter. The letter failed to delineate Coleman's whereabouts at the time of the alleged crime and did not contain Jones's address.

¶9. We have previously discussed sanctions for discovery violations in *Skaggs v. State*, 676 So.2d 897 (Miss. 1996) and *Houston v. State*, 531 So.2d 598 (Miss. 1988). These cases referenced the United States Supreme Court case of *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). *Houston* was the first Mississippi case to consider *Taylor*, and we discussed the possible implications of excluding a defendant's evidence at trial by stating:

"In this context, the radical sanction of exclusion of a substantial portion of the defendant's evidence is one that should rarely be used. Generally, it ought to be reserved for cases in which the defendant participates significantly in some deliberate, cynical scheme to gain a substantial tactical advantage. See *Taylor v. Illinois*, supra."

*Houston*, 531 So.2d at 612. More recently, in *Skaggs v. State*, 676 So.2d 897 (Miss.1996), we further considered appropriate sanctions for discovery violations: where discovery violations are not willful or motivated by a desire to gain a tactical advantage, a less severe sanction such as granting a continuance or mistrial to allow the prosecution time to investigate the proffered evidence should be used. *Skaggs* at 903 (citing *Taylor v. Illinois*, 484 U.S. at 413, 108 S.Ct. at 655, 98 L.Ed.2d at 813).

¶10. The instant facts present a new wrinkle in the fabric of sanctioning discovery violations. We must determine whether dilatory production by the defendant, to his attorney, of requested evidence may be subject to the exclusion sanction. In this case, nothing in the record suggests that the discovery violation was

done deliberately in order to gain a tactical advantage by attorney Rafferty; however, it is clear that for over two years defendant Coleman withheld information from his attorney until a week before trial. Although attorney Rafferty displayed due diligence in searching for the surprise witness, no legitimate explanation was tendered by Coleman to indicate that this information was withheld for any purpose other than to gain an unfair trial advantage. We distinguish between the conduct of attorney Rafferty and defendant Coleman because Coleman had more than a two year opportunity to assert alibi as a specific defense, which he failed to do. The only notice given the prosecution was a letter informing the State that Rafferty was looking for witness Jones a week before trial. Jones did not appear to testify until the last day of trial.

¶11. Further analysis of United States Supreme Court pronouncements in this area are helpful. *Taylor v. Illinois*, *supra*, was revisited in *Michigan v. Lucas*, 500 U.S. 145, 111 S.Ct. 1743, 114 L. Ed.2d 205 (1991), the issue being whether a trial court could preclude past sexual conduct evidence where a defendant's failure to comply with the notice requirement constituted a deliberate ploy to delay the trial, surprise the prosecution, or harass the victim. We quote the United States Supreme Court at length:

> To the extent that it operates to prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished. This does not necessarily render the statute unconstitutional. "*[T]he right to present relevant testimony is not without limitation. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal justice process*."' *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987), quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973).

> \*\*\*

> We have indicated that probative evidence may, in certain circumstances, be precluded when a criminal defendant fails to comply with a valid discovery rule. In *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), for example, the defendant wished to put on the witness stand an investigator to testify about statements made to him during an investigation, but the defendant refused to comply with the District Court's order to submit a copy of the investigator's report to the prosecution. The District Court therefore precluded the investigator from testifying, and this Court held that the District Court's "preclusion sanction was an entirely proper method of assuring compliance with its order." [422 U.S.] at 241, 95 S.Ct. at 2171. *Rejecting the defendant's Sixth Amendment claim, the Court explained that "[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system.*" *Ibid*.

*Lucas*, 500 U.S. at 149-52, 111 S.Ct. at 1746-48, 114 L.Ed.2d at 213-14 (emphasis added).

¶12. Defense attorney Rafferty was not made aware of his client's desire to pursue Jones as a potential alibi witness until the week before trial (May 15 or 16, 1997). By May 19, 1997, Rafferty was unable to locate Jones, so he sent a hand-delivered letter to the prosecuting attorney stating that Jones was a potential alibi witness and that her whereabouts, though presently unknown, would be provided as soon as discovered. Coleman argues that substantial performance of the alibi notice requirement should have guaranteed admission of the late-tendered testimony from Jones; however, specific requirements for alibi defense discovery are clearly stated in Rule 9.05. The defense is required to provide not only the name of the proposed witness, but "the specific place or places at which the defendant claims to have been at the time of the alleged offense" and the address of the alibi witness. Providing only a name, as in the case *sub*

*judice*, satisfies neither the letter nor the spirit of Rule 9.05.

¶13. One of the fundamental policies of our criminal procedural rules is the avoidance of unfair surprise to either the prosecution or the defense. *Ray v. State*, 503 So.2d 222, 225 (Miss.1986)(citing *Coates v. State*, 495 So.2d 464, 467 (Miss.1986)). The function of the notice of alibi is to afford the prosecution advance notice that the defendant may claim an alibi and that, if he does, his evidence will be thus and such. *Id.* In this way the prosecution is afforded a reasonable opportunity to investigate the alibi and to prepare rebuttal evidence for trial if the alibi is in fact asserted. *Id.*

¶14. Rule 9.05 contemplates a highly detailed mechanism for the State in determining whether the defendant intends to assert an alibi defense and what witnesses the defense will use in proving the defense. While the general purpose of discovery is to allow the adversary a fair opportunity in preparing for trial, the specific purpose of alibi defense discovery is to allow the State an opportunity of investigation and discovery evidence, if any, which may rebut the anticipated alibi defense. A largely synonymous rule has withstood constitutional scrutiny before the United States Supreme Court. *See, e.g.*, *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

¶15. The *Taylor* Court, in holding that the Sixth Amendment Compulsory Process Clause did not create a *per se* bar to the exclusion of a defense witness's testimony for failure to comply with a discovery rule, stated that if the trial court finds "that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause to simply exclude the witness' testimony." *Taylor v. Illinois,* 484 U.S. at 415, 108 S.Ct. at 656, 98 L.Ed.2d at 814. While the United States Supreme Court has buttressed *Taylor* with the more recent case of *Michigan v. Lucas*, the heart of the *Taylor* opinion does not harness a trial court's discretion with a *per se* restriction in applying discovery rules, namely the general rule of 9.04 and the specific alibi rule of 9.05. The Constitution does not require any *per se* rule of adopting a sanction less harsh than exclusion of defense alibi testimony, where the defendant, not necessarily the defense attorney, participated significantly in some "willful and blatant" discovery violation. *Taylor*, 484 U.S. at 416-17, 108 S.Ct. at 656-57, 98 L.Ed.2d at 815-16.

¶16. We quote at length the *Taylor* announcements on constitutionally valid sanctions for willful discovery violations:

> It may well be that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the State and the harm to the adversary process. . . . The risk of a contempt violation may seem trivial to a defendant facing the threat of imprisonment for a term of years. A dishonest client can mislead an honest attorney, and there are occasions when an attorney assumes that the duty of loyalty to the client outweighs elementary obligations to the court.
>
> \*\*\*
>
> In order to reject petitioner's argument that preclusion is *never* a permissible sanction for a discovery violation it is neither necessary nor appropriate for us to attempt to draft a comprehensive set of standards to guide the exercise of discretion in every possible case. It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of

witnesses in his favor. *But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process..., the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.*

*Taylor*, 484 U.S. at 413-15, 108 S.Ct. at 655-56, 98 L.Ed.2d at 813-14. (emphasis added & footnote omitted).

¶17. Allowing a trial judge the discretion to exclude otherwise admissible evidence on the basis of an intentional discovery violation, even when less drastic sanctions are available, undergirds the principles of fairness in our adversarial system. While the Sixth Amendment Compulsory Process Clause gives defendants the right of calling witnesses to their aid, rules of fairness require that constitutional limitations and sanctions be applied equally in the pursuit of justice. Where the failure to comply with the discovery rule is "willful and motivated by a desire to obtain a tactical advantage", exclusion of the proposed evidence "would be entirely consistent with the purposes of the Compulsory Process Clause". *Taylor*, 484 U.S. at 415, 98 L.Ed.2d at 814. If a particular remedy "would be consistent" with the Constitution under a particular set of circumstances, it is a stretch of legal gymnastics to argue, as Coleman does, that a particular remedy is permissible *only* in that set of circumstances.

¶18. The United States Court of Appeals for the Fifth Circuit interpreted *Taylor* in *United States v. Mizell*, 88 F.3d 288 (5th Cir. 1996), where that Court found:

> The Supreme Court has held that a district court can preclude a defendant from calling a witness as punishment for the defendant's willful violation of a discovery order. See [*Taylor*] at 414, 108 S.Ct. at 655 (holding that preclusion of a witness's testimony was appropriate where the defendant's violation of a discovery request was "willful and motivated by a desire to obtain a tactical advantage").

*United States v. Mizell*, 88 F.3d at 294.

¶19. The *Taylor* Court seems to have logically anticipated the specific facts of the case *sub judice*. The risk of an intentional contempt violation by Coleman would be trivial when he was facing many years in the penitentiary on a habitual offender conviction. While attorney Rafferty used due diligence in trying to locate the surprise witness, it is clear that Coleman intentionally misled his attorney by the production of a last minute alibi witness. The testimony of this surprise alibi witness would have disrupted the adversary process and flaunted the public interest in the fair and efficient administration of justice. We therefore impute the consequential sanction of excluded testimony directly to Coleman and fully adopt the rule of *Taylor v. Illinois*: Where a trial court finds that an alibi discovery violation is willful and motivated by a desire to obtain a tactical advantage, or where the facts indicate that the defendant intentionally failed to co-operate with his own counsel to the extent of indicating a willful disdain for the adversarial system that would minimize the effectiveness of cross-examination and the adversary process, excluding the proffered testimony is entirely consistent with both Rule 9.05 and the Sixth Amendment Compulsory Process Clause. In light of the foregoing, the trial court correctly excluded the testimony of Coleman's proffered alibi witness, and therefore, we affirm on this issue.

**II. Whether Coleman was denied his right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.**

¶20. The components of a viable claim for ineffective assistance of counsel were discussed recently by this Court in ***Henley v. State***, 729 So. 2d 232 (Miss. 1998). In ***Henley***, the Court held that a defendant must show that counsel's performance was deficient and that the defense was prejudiced as a result. ***Id.*** at 241; See also ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Trial counsel will be presumed competent for the purposes of an ineffective assistance claim, and in order to overcome this presumption, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his trial would have been different." ***Henley v. State,*** 729 So.2d at 241 (*citing* ***Drennan v. State***, 695 So.2d 581, 586 (Miss.1997) (*quoting* **Schmitt v. State**, 560 So.2d 148, 154 (Miss.1990)). In determining whether counsel was ineffective, we review counsel's performance as a whole in light of the totality of circumstances. ***Id.***

¶21. Coleman's claim for ineffective assistance of counsel rests primarily on the contention that Rafferty improperly handled his alibi defense, but he claims other errors as well, namely: that voir dire was conducted in part while the defendant was in prison clothes without objection from counsel until voir dire was complete; that a venireman was allowed to state that he knew the defendant from his work at a local correctional facility; that a member of the Gulfport police force testifying for the State was allowed to say that he recognized the defendant, implicitly from prior contact, and finally; that no motion for a speedy trial was ever filed though two years and four months elapsed between the defendant's arrest and his trial.

¶22. First, we consider Rafferty's handling of the alibi defense. The record indicates that Coleman did not inform Rafferty of his desire to use Jones as an alibi witness until the week before trial, whereupon Rafferty began efforts to locate her, calling relatives, and literally searching door to door in the neighborhood in which Jones was reputed to live. He was able to locate her the night before the second and final day of trial. Rafferty did not subpoena the witness, but Jones voluntarily appeared to testify. Rafferty's only apparent failure with regard to the alibi defense was that his notice to the State did not comply with Rule 9.05. Rafferty waited three days before informing the prosecution of the intent to call Jones as an alibi witness. These three days, the record shows, Rafferty spent searching for Jones. The delay in sending notice of the potential witness to the State while attempting to ascertain the whereabouts of that witness was not, under the facts of this case, unreasonable. Coleman's own delay in revealing Jones to his counsel was a greater factor in the defective notice of the alibi defense. Coleman, not attorney Rafferty, made a calculated decision to ignore his own alibi witness until the week before trial; therefore, Coleman must suffer the consequences. This assignment is without merit.

¶23. Coleman's next complaint centers upon the fact that voir dire was conducted in part while he was dressed in prison clothes. On the morning of trial, the judge was informed that the defendant did not have his civilian clothes. Apparently, someone from the Sheriff's Department was supposed to bring the defendant's clothes but did not do so. Upon learning of the problem, defense counsel asked a member of the defendant's family bring some more clothes, but these did not arrive until after jury selection was begun. At some point, the jailers obtained a set of clothes for the defendant to wear, but they were not his own. The judge instructed the defendant to wear those clothes until his arrived, but he refused to wear or even look at them. Coleman was further advised that if he refused to wear the clothes, the trial would begin with him in prison garb. Coleman again refused, and jury selection was begun with him dressed in prison attire. During voir dire, Coleman's own clothes arrived, and he was allowed to put them on. At the close of voir dire, defense counsel moved to quash the jury based on fact that the jury had seen Coleman in his prison jumpsuit. The motion was denied.

¶24. Coleman now alleges that counsel was deficient in failing to object before jury selection; however, he offers no evidence that the alleged deficiency had any bearing on the outcome of the trial. This assignment is without merit.

¶25. Coleman also contends that counsel was ineffective in that no motion for a speedy trial was filed though two years and four months elapsed between the defendant's arrest and trial. Coleman's right to a speedy trial was waived on August 26, 1996 and on March 3, 1997. He points to nothing in the record to suggest that these waivers were made contrary to his wishes, nor is there any indication that the waivers were not in his interest. Coleman also fails to show that any prejudice resulted from the failure to assert the right to a speedy trial. For these reasons, this assignment is without merit.

¶26. Coleman further alleges that counsel was ineffective in that a venireman was allowed to state before the jury without objection that he knew the defendant from working at a local correctional facility. However, Coleman makes no showing that but for this mistake, the result of the trial would have been different. Finally, Coleman complains that a member of the Gulfport police force testifying for the State was allowed to say that he recognized the defendant, implicitly from prior contact, and though his counsel objected to the statement, no ruling was received. Again, Coleman fails to illustrate any way in which his defense was prejudiced. This assignment, therefore, also lacks merit.

¶27. In proving an ineffective assistance of counsel claim, the defendant carries a heavy burden. He must demonstrate specifically in what way his counsel was deficient and show with reasonable probability that but for the counsel's errors, the outcome of the trial would have been different. In order to find for the defendant on the issue of ineffective assistance of counsel, this Court would have to conclude that counsel's performance as a whole fell below the standard of reasonableness and that the mistakes made were serious enough to erode confidence in the outcome of the trial below. In this case, Coleman's counsel performed in a competent manner.

## CONCLUSION

¶28. There is ample evidence suggesting that Coleman's failure to comply with Uniform Circuit and County Court Rule 9.05 was either part of a willful ploy to gain a tactical advantage or evidences the defendant's own contemptuous disdain for the adversarial system through his own refusal to assist his attorney. Therefore, the exclusion of Jones's testimony was appropriate under the circumstances. Additionally, Coleman's ineffective assistance of counsel claim is without merit. For these reasons, Coleman's conviction and sentence and the judgment of the Harrison County Circuit Court are affirmed.

¶29. **CONVICTION OF TRANSFER OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE, AND SENTENCE TO SERVE A TERM OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCE WITHOUT HOPE OF PAROLE OR PROBATION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. AND BANKS, J.**

**McRAE, JUSTICE, DISSENTING:**

¶30. The exclusion of Patrick Leon Coleman's sole alibi witness as a sanction for belated discovery is a penalty too severe when a continuance would have sufficed. The majority writes that "[a]llowing a trial judge the discretion to exclude otherwise admissible evidence on the basis of an intentional discovery violation, **even where less drastic sanctions are available,** undergirds the principles of fairness in our adversarial system." (emphasis added). Because I disagree with this reasoning, I dissent.

¶31. Our rules require that an accused who intends to offer an alibi defense must give the prosecution ten days notice where the prosecution issues a written demand for same. Unif. R. Cir. & County Ct. 9.05. Rule 9.05 delineates the sanctions to be employed for violations:

> 1. Granting a continuance;
>
> 2. Limiting further discovery of the party failing to comply; or
>
> 3. Finding the attorney failing to comply in contempt;
>
> 4. Excluding the testimony of the undisclosed witness.

¶32. These sanctions are similar to those used to address general discovery violations. Under *Box v. State*, 437 So.2d 19 (Miss. 1983), a party who objects to evidence on the basis that it was not timely disclosed is entitled to a continuance or even a mistrial if a continuance cannot cure the violation. A continuance, however, is not necessary where the party responsible for the discovery violation withdraws the evidence. While the remedies set forth in *Box* apply to discovery violations committed by both the prosecution and the defense,[1] the Court must be mindful that the accused, unlike the State, has a right, under the Sixth and Fourteenth Amendments, to establish a defense. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct 1920, 1923, 18 L.Ed.2d 1019 (1967). For this reason, we have cautioned judges that the exclusion of a defense witness's testimony should only be done as a last resort and reserved for "cases in which the defendant participates significantly in some deliberate cynical scheme to gain a substantial tactical advantage." *Hall v. State*, 546 So.2d 673, 676 (Miss.1989); *Houston v. State*, 531 So.2d 598, 612 (Miss.1988).

¶33. In ruling that Coleman's alibi witness was properly excluded in this case, the majority forgets that we, as jurists,

> have a responsibility to fervently protect the rights of those accused of a crime, regardless of how repugnant we may find their actions. "Even those guilty of the most heinous offenses are entitled to a fair trial." *Screws v. United States*, 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945). On the other hand, we have no duty to protect any "rights" of the prosecution. . . .

*De La Beckwith v. State*, 707 So.2d 547, 616 (Miss. 1997), (Sullivan, P.J., concurring in part and dissenting in part). My concern is that, more often that not, a prosecutor who commits a violation of our discovery rules is sanctioned by allowing the defense a continuance to familiarize itself with the heretofore undisclosed evidence.[2] When the defense commits the same violation, trial courts are all too quick to exclude the defendant's witnesses even if, in so doing, the defendant is robbed of his only defense.[3] Indeed, the uneven application of our discovery rules to punish the defense more severely than the prosecution may itself violate due process. *See Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980) (disparate treatment under state law may rise to federal due process violation).

¶34. "A defendant has a legal right to have the jury consider his sole defense and an error which denies him that right is substantial, not harmless." *Wilson v. State*, 390 So.2d 575, 581 (Miss.1980). *See also Lester v. State*, 692 So.2d 755, 787 (Miss.1997) (citing *Sayles v. State*, 552 So.2d 1383, 1384 (Miss.1989)); *Giles v. State*, 650 So.2d 846, 848-50, 854 (Miss.1995); *Jenkins v. State*, 607 So.2d 1171, 1178 (Miss.1992). Moreover, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). While, in certain circumstances, exclusion of a defendant's witness is justified, the facts in *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), indicate that the circumstances which justify exclusion are very limited. In *Taylor,* defendant's counsel first mentioned two additional defense witnesses on the second day of trial explaining that he had just learned of the witnesses. The trial court asked that counsel bring the witnesses to court the following day. When the witnesses showed up, the court learned that defense counsel had spoken to them several days prior to trial. The trial court excluded the witnesses from testifying. In finding the exclusion did not violate due process, the United States Supreme Court discussed a balancing test employed by the Ninth Circuit in *Fendler v. Goldsmith*, 728 F.2d 1181, 1188 (9th Cir. 1983), to evaluate discovery violations. *Taylor*, 484 U.S. at 415 n.19, 108 S.Ct. at 655 n.19. "At the outset, we emphasize that for a balancing test to meet Sixth Amendment standards, it must begin with a presumption against exclusion of otherwise admissible defense evidence." *Fendler,* 728 F.2d at 1188. In determining whether to exclude evidence for violation of discovery rules, *Fendler* offered the following factors: 1) the effectiveness of less severe sanctions, 2) the impact of preclusion on the evidence at trial and the outcome of the case, 3) the extent of prosecutorial surprise of prejudice, and 4) whether the violation was wilful. *Fendler*, 728 F.2d at 1187.

¶35. Additional factors were cited by the United States Supreme Court: "The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence; the interest in the fair and efficient administration of justice; and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance." *Taylor*, 484 U.S. at 414-15, 108 S.Ct. at 656 (footnote omitted).

¶36. In the instant case, there is no reason a less severe sanction could not have been imposed on the defense for failure to abide by Rule 9.05. Both parties were aware prior to trial that the defendant wished to present an alibi defense. Furthermore, this case was not a slam-dunk for the prosecution: there was some question as to whether the defendant was the same man who appeared on the prosecution's videotape of the deal and the jury had to be given a *Sharplin* "dynamite" charge before it could return a verdict. Coleman's alibi witness may well have made a difference in the outcome of this trial.

¶37. A continuance prior to trial would have given both the prosecution and the defense time to locate and question the proposed alibi witness. The majority's opinion, however, allows the trial court to exclude a defense witness, and thereby an entire defense, without first determining whether a less drastic sanction would suffice to remedy the Rule 9.05 violation. A fair trial under these sanctions and circumstances was not accorded the Coleman. Truth, justice and due process are not served by the majority opinion. I would reverse and remand for a new trial.

¶38. For these reasons, I dissent.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**

1. ***Ramos v. State***, 710 So.2d 380, 385 (Miss. 1998); ***Darghty v. State***, 530 So.2d 27, 33 (Miss. 1988); ***Coates v. State***, 495 So.2d 464, 467 (Miss.1986); ***Acevedo v. State***, 467 So.2d 220, 224 (Miss.1985).

2. *See, e.g.*, ***Snelson v. State***, 704 So.2d 452, 458 (Miss. 1997) (defense learned during closing argument that prosecution intended to introduce evidence of statement by defendant implying that defendant had intent to kill; trial court granted continuance; we held was only remedy); ***West v. State***, 553 So.2d 8, 17-20 (Miss. 1989) (prosecution presented surprise testimony that defendant may be a necrophiliac; trial court granted a day's continuance; we held that this remedy was insufficient); ***Minnick v. State***, 551 So.2d 77, 86 (Miss. 1988) (trial court allowed defendant continuance where identity of prosecution's witness not disclosed until first day of trial). Often (and somewhat inexplicably), though, trial courts fail to even recognize that there has been a violation. *See, e.g.* ***Kolberg v. State***, 704 So.2d 1307, 1317 (Miss. 1997).

3. *See, e.g.*, ***Tucker v. State***, 647 So.2d 699, 703 (Miss. 1994); ***Hall v. State***, 546 So.2d 673, 676 (Miss. 1989).